THE STATE v. ROSE, *Appellant.*

Division Two, February 1, 1898.

1. **Criminal Law:** NEW TRIAL: LACK OF EVIDENCE. The granting of a new trial on the ground of a want of evidence to support the verdict, rests largely in the discretion of the trial court; and where the verdict has received the approval of that court and there is substantial evidence to support it, the appellate court will not interfere.

State. v. Rose.

2. ——: LACK OF DELIBERATION.  Where there is no evidence showing that the homicide was deliberate, no instruction for murder in the first degree should be given.

3. ——: DEFINITION OF MANSLAUGHTER.  The facts and circumstances attending homicides are so diversified that it is impossible to lay down any absolute rule as to all the necessary elements of manslaughter, and the one announced in 1 Wharton's Criminal Law, [9 Ed.] section 304, seems to be generally accepted by American courts as correct.

4. ——: ARRESTS: FORCE USED BY AN OFFICER: HEAT OF PASSION: MANSLAUGHTER.  If an officer without malice intentionally shoots and kills another while resisting arrest, and in so doing uses no more force or violence than is reasonably necessary to accomplish his arrest, the homicide is justifiable.  But if he uses more force than is reasonably necessary for that purpose, and shoots the other while resisting arrest, he is guilty of manslaughter in the fourth degree.  Or if immediately after the other ceases to resist arrest, the officer in the heat of passion, engendered by the other striking him in the face with his fists or hands, shoots and kills the other, intentionally but without malice, he is guilty of manslaughter in the fourth degree.

5. ——: NON-PREJUDICIAL INSTRUCTION.  A judgment can not be reversed because an instruction was given upon which there was no evidence to predicate it and which moreover presents a mere abstract proposition of law, if it is also apparent that such instruction imposes no additional burden upon the other side, and invades none of his personal rights, and therefore could not have been prejudicial to him.

6. ——: ARRESTS: FORCE "ABSOLUTELY NECESSARY."  An instruction that told the jury that an officer "had no right to use any more force in making or attempting to make the arrest than was absolutely necessary" is held to be erroneous, as requiring the officer to determine the necessary force with a degree of precision that is impossible.

7. ——: RETAINING JURY FOUR DAYS.  It is held that the trial judge, in retaining a jury for four days before it found a verdict, did not exceed his discretionary powers, in the absence of any showing of coercion on his part.

*Appeal from Howard Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*O. S. Barton* and *W. M. Williams* for appellant.

(1) The verdict was against the evidence, and against ,the law laid down by the trial court, and the defendant should be awarded a new trial upon that ground alone. It was the result of prejudice and was far more severe than could have been anticipated. (2) The instruction of the court, telling the jury that the defendant had no right to use any more force than was absolutely necessary to make the arrest, stated the matter too strongly for the prosecution. The defendant had to act upon the appearances presented to him at the time. If he used no more force than appeared to be reasonably necessary, and that he had good reason to believe, and did believe, was necessary from the surrounding circumstances, he should not be liable. *State v. Palmer*, 88 Mo. 568; *State v. Dierberger*, 96 Mo. 666; Wharton, Crim. Law [8 Ed]., sec. 402; *State v. Dierberger*, 96 Mo. 666; *State v. Fuller*, 96 Mo. 163; *State v. McNally*, 87 Mo. 644. (3) The court failed to instruct the jury as to manslaughter in the second degree. R. S. 1889, sec. 3470. (4) The twelfth and thirteenth instructions set out certain facts and told the jury that if they existed the defendant could not be acquitted, but did not state of what offense he could not be so acquitted. The court had given instructions defining murder in the first degree, murder in the second degree and manslaughter in the fourth degree. The jury were left to grope in the dark by these instructions as to the degree of homicide of which they could convict the defendant. (5) The eleventh instruction was a mere abstract proposition, and misleading. (6) The jury were kept in confinement under charge of an officer an unreasonable length of time, and the verdict was not the result of their deliberate judgment. (7) The court failed to define "heat of passion," as used

in the instructions.  *State v. McKinzie*, 102  Mo. 620.
(8)  The indictment in this case is bad for the reason
it does not conclude in the  manner  pointed out in the
case of  *State v. Rector*, 126  Mo. 328:  "Any material
omission in the conclusion of an indictment is as fatal
as if occurring in any other portion of the instrument."
*State v. Rector*, 126  Mo. 328;  *State v. Pemberton*, 30
Mo. 376.

*Edward C. Crow*, Attorney-General, and  *Sam B.
Jeffries*, Assistant Attorney-General, for the State.

(1)  The indictment is in valid  form  for murder
in the first degree.  It employs virtually the same lan-
guage as used in the  indictment  in the case of *State v.
Turlington*, 102  Mo. 642, which, in  that  case, is fully
and elaborately commented upon by the court, in which
the following  cases  are  cited  as authority in support
thereof:  *State v. McDaniel*, 94  Mo. 86;  *State v. Bar-
nett*, 81  Mo.  119;  *State v. Hughes*, 82  Mo. 86;  *State
v. Burns*, 99  Mo. 471.   (2)  Objection is also made
by defendant  that the  court  failed to  properly in-
struct the  jury  on  all  questions of law.   Advantage
of such failure upon the  part  of  the  trial court, if
there was a  failure in  that  regard, can  not now be
considered.   It should have  been called to the atten-
tion of the  trial court at the time the instructions
were given.   *State v. Cantlin*, 118  Mo. 111;  *State v.
Paxton*, 126 Mo. 500;  *State v. Woods*, 137 Mo. 6.   (3)
The court gave  the  jury all  instructions as offered by
defendant and they, with those for the State, set all ob-
jection on the question of sufficiency or form of the in-
structions at perfect rest.  Even though the instruction
defining and  instructing  upon murder in the first de-
gree be incorrect, defendant has no right to complain,
for the  reason  that  he  was  not convicted of that of-
fense.   *State v. Williams*, 68 Mo. 110;  *State v. Kelley*,

85 Mo. 143. (4) ˎ All of the technical words and terms, such as willful, deliberate, premeditated, malice and malice aforethought, as used in the instructions, were properly defined. *State v. Frazier*, 137 Mo. 317. (5) There is nothing in the record showing that the verdict is not the deliberate judgment of the jury or that by reason of being kept in confinement some of the jurors were induced to agree upon a verdict against defendant. Allegations contained in motion for a new trial do not prove themselves.

BURGESS, J.—Defendant was indicted at the November term, 1896, of the Howard circuit court, for murder in the first degree, for having shot to death with a pistol one Charles Wells at said county, on the evening of the third day of November of that year. At the April term, 1897, of said court, defendant was put upon his trial and found guilty of murder in the second degree, and his punishment fixed at ten years' imprisonment in the penitentiary. From the judgment and sentence he prosecutes this appeal.

The homicide occurred on the evening of the third day of November, 1896, after the general election which was held upon that day, at which time defendant was on duty as deputy constable of the city of Glasgow, where the killing took place. A large crowd had collected on the streets, as is usual upon such occasions, and among those present was the deceased. He was very boisterous, and just before the shooting threw a rock and struck a negro, and defendant saw him picking up other rocks with the apparent purpose of throwing them at some other person in the crowd. Defendant then undertook to arrest him and the deceased resisted, whereupon defendant grabbed him and struck him over the head with his pistol. The deceased pulled away from the defendant, when one of the

friends of deceased caught and held defendant while deceased struck him in the face with his hand or fist. In the meantime defendant dropped his pistol, and upon calling for it, someone handed him a pistol. By this time deceased had started off and had gone a few steps, when the defendant called out to clear the way, and as the crowd gave way he fired three shots at the deceased, one of which struck him, from the effects of which he died within thirty minutes thereafter.

The court instructed the jury upon murder in the first and second degrees, manslaughter in the fourth degree, and justifiable homicide. The fifth, eleventh, twelfth and thirteenth instructions given upon the part of the State are criticized by defendant. They are as follows:

"5. If you shall believe from the evidence that the defendant shot and killed Wells, while the defendant was in a violent passion, suddenly aroused by reason of Wells having shoved him, or struck him with his fist or hand, or with a rock, or while resisting arrest, in which he used more force than was necessary to accomplish the same, you can not find him guilty of murder in either degree, for in that case the law presumes that such shooting and killing was not done of defendant's malice, but by reason of such passion. On the other hand, although you may believe that defendant shot and killed Wells while in a violent passion, suddenly aroused by a shove or a blow from Wells, yet if you shall further believe from the evidence that such shooting and killing was not necessary in order for the defendant to arrest Wells, as hereinafter explained, you will find him guilty of manslaughter in the fourth degree.

"11. The court instructs the jury that an officer, in making an arrest, has the right to call to his aid and assistance any, and if necessary, all persons within the

hearing of his voice to assist him in accomplishing an arrest.

"12. The court instructs the jury that under the laws of this State a police officer or constable, in attempting to arrest a person for a breach of the peace, or an attempted breach of the peace, has no right to use any more force in making or attempting to make the arrest than is *absolutely* necessary under all the circumstances of the case; and in this case, although you may find and believe from the evidence that the defendant was a police officer and had a right to arrest persons for the commission of breaches of the peace, and that at the time of the killing he was attempting to arrest the deceased for a breach of the peace, yet if you further find from the evidence that in attempting said arrest the defendant used more force than was necessary under all the circumstances to accomplish the same, then you *can not acquit the defendant.*

"13. The court declares the law to be that, although you may find and believe from the evidence that the defendant in this case, acting as a police officer, was, at the time of the killing of the deceased, attempting to arrest deceased for a breach of the peace, and although you may further find that just prior to the shooting the deceased had resisted arrest by said defendant, and had used force in said resistance, yet if you further find and believe from the evidence that at the time of the firing of the fatal shot by the defendant (if you find that he did fire the fatal shot) the deceased had ceased to resist arrest by the defendant, and was at the time of the killing making no resistance, and that the defendant as such police officer, in firing the fatal shot (if he so fires the same), used no more force than was necessary under all the circumstances, then you should acquit the defendant."

It is insisted that the verdict of the jury is against

the evidence and the law as declared by the court, and that the judgment should for that reason alone be reversed.

The granting of a new trial upon the ground of the want of evidence to support the verdict of the jury, rests largely in the discretion of the trial court; and where the verdict has received the approval of that court, as in the case at bar, and there is substantial evidence to support it, this court will not interfere. There was evidence tending to show that when defendant fired the fatal shot deceased was only a few feet from him, walking slowly away. Upon the other hand there was some evidence tending to show that deceased was shot whilst resisting arrest. The evidence upon this point was therefore conflicting, and the verdict was not without sufficient evidence to support it, and will not under the circumstances be disturbed upon this ground. *State v. Cook*, 58 Mo. 546; *State v. Musick*, 71 Mo. 401; *State v. Minton*, 116 Mo. 605.

The fifth instruction clearly defines manslaughter of the fourth degree, and was well warranted by the evidence. There can be no doubt from the testimony that the killing was intentional. There was, however, no evidence showing that it was deliberate, which is necessary in order to constitute murder in the first degree, hence no instruction should have been given for that grade of offense. But from the evidence defendant was guilty of murder in the second degree, or of manslaughter in the fourth degree, or the homicide was justifiable. "Under our statute (1 Wag. Stat. 1870, sec. 18, p. 447; R. S. 1889, sec. 3477), manslaughter in the fourth degree includes every homicide not justifiable or excusable, which was manslaughter at common law, and which is not declared to be manslaughter in the first, second, or third degree." *State v. Edwards*, 70 Mo. 480.

Mr. Wharton, in speaking of manslaughter, says: "Manslaughter is defined to be the unlawful and felonious killing of another, without malice aforethought. Voluntary manslaughter is an intentional killing in hot blood, and differs from murder in this, that though the act which occasions the death be unlawful, or likely to be attended with bodily mischief, yet the malice aforethought, which is the essence of murder, is presumed to be wanting; and the act being imputed to the infirmity of human nature, the punishment is proportionately lenient." 1 Wharton's Criminal Law [9 Ed.], sec. 304, 1 Hale, 449; 1 Hawk, ch. 30, sec. 2, 3; 1 East, P. C. 232; *Ex parte Tayloe*, 5 Cowen, 51; *Com v. Drum*, 58 Pa. St. 9; *Penn v. Lewis*, 1 Addison, 279; *Erwin v. State*, 29 Ohio St. 186; *Stout v. State*, 90 Ind. 1; *Conn v. Mitchell*, 1 Va. Cases, 116; *State v. Smith*, 10 Rich. (Law) 341; *Stokes v. State*, 18 Ga. 17; *Perry v. State*, 43 Ala. 21; *Murphy v. State*, 31 Ind. 511; *Williams v. State*, 15 Tex. App. 617; *State v. Umfried*, 76 Mo. 404.

This definition is said to be "unsatisfactory" by Mr. Bishop, in his work on New Criminal Law, "both because the words 'malice,' and 'malice aforethought,' convey in themselves no clear idea of the thing which in law is signified by them, and particularly because it does not adequately draw the line between the indictable and unindictable forms of homicide." 2 Bishop's New Crim. Law, sec. 736. But the facts and circumstances attending homicides are so diversified that it is impossible to lay down any absolute rule as to manslaughter and the one announced by Mr. Wharton seems to be generally accepted as correct.

If defendant, without malice, intentionally shot and killed deceased while resisting arrest, and in so doing used no more force or violence than was reasonably necessary to accomplish his arrest, the homicide was

justifiable (2 Bishop's New Crim. Law, secs. 647, 650). But if he used more force than was reasonably necessary for that purpose, and shot deceased while resisting arrest, he was guilty of manslaughter in the fourth degree. R. S. 1889, sec. 3477, *supra*. Or if, immediately after deceased ceased to resist arrest, defendant, in the heat of passion engendered by deceased striking him in the face with his hand or fist, shot and killed him intentionally, but without malice, he was guilty of manslaughter in the fourth degree. State v. Starr, 38 Mo. 270; *State v. Holme*, 54 Mo. 165; 1 East's Pleas of the Crown, 233, 234, 235; 2 Bishop's New Crim. Law, sec. 676, 695, 708; Wharton on Homicide, sec. 5; *State v. Edwards*, 70 Mo. 480; *State v. Dierberger*, 96 Mo. 666. These questions were very fairly presented to the jury by the State's fifth instruction, and the third and fourth given on the part of defendant.

The eleventh instruction complained of had no evidence upon which to predicate it, and moreover presented a mere abstract proposition of law, but it imposed no additional burden upon the defendant, invaded none of his rights, deprived him of no privilege to which he was entitled under the law, and therefore could not possibly have been prejudicial to him, and the judgment should not be reversed upon that ground.

The State's twelfth instruction is criticised upon the ground that it imposed upon defendant the duty of determining with absolute certainty what force was necessary to be used in making the arrest, while the law justified him in using such force as it appeared to him from the surrounding circumstances to be reasonably necessary for that purpose. The law does not require an officer in making an arrest for a misdemeanor or criminal offense committed in his presence, when resistance is offered, to determine with absolute

precision what force is necessary for that purpose, for that would be an impossibility, but it does require that he shall not use any more force than may seem to him to be reasonably necessary for the purpose. It did not require defendant under the circumstances ''to nicely gauge the proper *quantum* of force necessary'' to arrest defendant in the event of his resistance. *State v. Palmer*, 88 Mo. 568. While in that case the defense interposed was that of self-defense, there is no difference in principle between that case and the one in hand under the facts disclosed by the record. As was said in *Williams v. State*, 15 Tex. App. 617: ''Defendant was entitled to have the jury apply the law to the facts, not as they appeared to the jury, but as they reasonably appeared to him,'' at the time of the homicide, and was not required to determine what force was necessary to make the arrest, when deceased resisted and then to use no more force than was *absolutely* necessary for that purpose. The instruction in this regard was misleading and presumably prejudicial to defendant.

The thirteenth instruction given in behalf of the State is also challenged by defendant, but while it presented a different phase of the case, to wit, that of the commission of the homicide after deceased ceased to resist arrest, from those covered by the instructions heretofore passed upon, it is in accordance with what has hereinbefore been said and the objection untenable.

The objection that the twelfth and thirteenth instructions did not tell the jury of what offense the defendant could be acquitted or convicted, is without merit, as those matters were sufficiently specified in the instructions.

Complaint is also made that the court kept the jury in confinement under the charge of an officer an unreasonable length of time, to wit, from Thursday,

State v. Rose.

April 8, until Monday, April 12, when the verdict was returned, and for that reason the verdict was not the result of their deliberate judgment. There is no pretense that there was any effort upon the part of the court to coerce the jury into making a verdict, or that there was any unfairness upon the part of the court other than what may be inferred, if any, from the fact of retaining the jury while upon its deliberations for four days. Such matters pertain altogether to the order of business of the trial court, which must of necessity have very large descretionary powers with respect thereto, and in the absence of manifest abuse of such discretion this court will not interfere, and no such abuse is apparent in this case.

A final contention is that the court failed to define "heat of passion," as used in the instructions, but this seems to be a misapprehension of the only instruction in which those words are used, to wit, the fifth, wherein it is said, "while the defendant was in violent passion, suddenly aroused by reason of Wells having shoved him, or struck him with his fist or hand," or that defendant shot and killed Wells "while in a violent passion, suddenly aroused by a shove or blow from Wells." No further definition was necessary.

But even if such definition was necessary, defendant, in order to avail himself of that objection, should have called the attention of the trial court to its failure in this regard before the case was submitted to the jury. *State v. Cantlin*, 118 Mo. 111; *State v. Paxton*, 126 Mo. 500; *State v. Woods*, 137 Mo. 6.

For these considerations we reverse the judgment and remand the cause.

GANTT, P. J., and SHERWOOD, J., concur.