# THE STATE v. COLEMAN, Appellant.

### In Banc, February 2, 1905.

1. **MURDER: Threats: Remoteness.** In a prosecution for murder threats made by the defendant against the deceased are competent evidence, and the nearness or remoteness of the time when the threats are made to the date of the homicide do not affect their competency.

2. ———: **Verdict of Coroner's Jury as Evidence: Non-Reversible Error.** The prosecuting attorney, in a prosecution for murder, asked a witness if he, as a member of the coroner's jury, returned a certain verdict (reading it), in which that jury found that the killing was unjustified. Defendant objected to the witness's answering the question, and the objection was sustained. *Held,* that, while the verdict of the coroner's jury was inadmissible for any purpose, yet since no objection was made or exception taken to the action of the prosecuting attorney in asking the question, he was not guilty of such impropriety as would justify the appellate court in interfering with the verdict upon that ground. Especially should this be the holding where, as in this case, the trial court has refused to set aside the verdict on that ground.

3. **ARREST: Duty of Officer: Reasonable Force.** It is the duty of an officer, in endeavoring to make an arrest, to use sufficient force to accomplish the arrest and to bring the offender within his control, but if he uses more force than is reasonably necessary for that purpose, and thereby kills the offender, he is guilty of a criminal offense, its grade depending upon the facts and circumstances in evidence.

4. **INSTRUCTION: Statements of Defendant: Non-Prejudicial Error.** An instruction that what defendant has said against himself the law presumes to be true, but what he has said in his own behalf the jury are not obliged to believe, can not be held to be prejudicial error, even though there is no evidence upon which to base such an instruction. And conceding that error made against a defendant is presumptively prejudicial, this presumption may be overcome by the facts and circumstances in evidence, if sufficient. (Valliant, J., dissenting.)

5. ———: **Misleading: Arrest: Good Faith.** An instruction which tells the jury that the records, ordinances, and the verbal testi-

mony of the town mayor are admitted in evidence as tending to prove defendant's good faith in attempting to arrest deceased for selling fish on the sidewalk, and then proceeds to say, "Under said ordinances and records the selling of fish or the obstruction of the sidewalk did not constitute an offense thereunder, and does not justify or excuse the defendant for shooting deceased" —is misleading, in that it so couples the absence of excuse for shooting deceased with the preceding part of the instruction as to neutralize the question of good faith on the part of defendant in his efforts to make the arrest.

6. ————: **Reasonable Doubt: Covered by General Instruction.** Where a general instruction, given on the part of the State, covers the question of reasonable doubt, it is not necessary that this question should be repeated in any other instruction.

7. **ARREST: Authority of Officer: Unnecessary Force.** Where an officer has good reason to believe that he has authority to arrest an offender, and acts in good faith in making the arrest, and the offender resists, the officer has the right to use force to accomplish the arrest, and if it becomes necessary to kill him to save his own life, or his person from great bodily harm, he has the right to do so. But though the officer may believe he has authority to make the arrest, yet if in so doing he uses more force than is reasonably necessary to accomplish the arrest, and shoots and kills the offender in malice and with premeditation, because he does not remove his hand from his pocket when commanded to do so by the officer, the officer is guilty of murder in the second degree, unless acting in self-defense. And if he uses more force than is reasonably necessary, and kills the offender, but without malice and premeditation, he is guilty of manslaughter in the fourth degree.

8. **MANSLAUGHTER: No Instruction Asked.** Where defendant asks no instruction on manslaughter in the fourth degree, and does not call the court's attention to its failure to instruct upon all the law of the case, the court does not err in failing to give such instruction.

9. **ARREST: Instruction: No Evidence.** Instructions based on the theory that deceased was violating an ordinance of the town prohibiting the selling of fish on the streets, when defendant attempted to arrest him, when in fact there was no such ordinance—are properly refused.

10. **INFORMATION: Omission of Words "Upon His Oath:" Invalid.** An information for murder should conclude, "and so the prosecuting attorney aforesaid *upon his oath* does say," etc. And an information which omits the words "upon his oath" is invalid, and being so, its invalidity may be raised for the first time in the appellate court.

State v. Coleman.

*Held*, by **Gantt, J.**, dissenting, in a separate opinion, that the omission of the words "upon his oath" does not render the information invalid, since a prosecuting attorney, when he files an information, is presumed to do so by virtue of his office, and it is not necessary for him to allege his right to do so, or that he charge the defendant with the offense "upon his oath" as such officer.

11. ———: **Affidavit: Deposited With Clerk: Filing.** Depositing the affidavit of a competent witness with the clerk of the circuit court is a sufficient filing within the meaning of the statute (sec. 2477, R. S. 1899).

12. ———: ———: ———: ———: **Failure to Endorse: Irregularity.** The failure of the clerk of the circuit court to endorse upon an affidavit the filing of the same, and the date thereof, is at most an irregularity which could be amended at any time before or during trial, but which can not be raised for the first time in the appellate court.

Appeal from Chariton Circuit Court.—*Hon. John P. Butler*, Judge.

REVERSED AND REMANDED.

*Ball & Sparrow* for appellant; *A. W. Johnson* of counsel.

(1)   The reading of the verdict of the coroner's jury to witness Davenport was error. State v. Garth, 164 Mo. 553. The fact that the court permitted the verdict of the coroner's jury to be read in the form of a question, and then sustained an objection by defendant, does not cure the error. It is like admitting incompetent evidence in a criminal case and then attempting to cure the error by instructions. State v. Thomas, 99 Mo. 235; State v. Kuehner, 93 Mo. 193; State v. Fredericks & Reed, 85 Mo. 145; State v. Mix, 15 Mo. 153. (2)   The defendant was an officer of the law. The deceased knew him to be an officer of the law. It was the duty of defendant, under the facts in this case, to arrest the deceased. Therefore, as such officer, he must of necessity be the aggressor. As such officer it was his

State v. Coleman.

duty to use sufficient force to accomplish the arrest, and he must of necessity be the judge of the force necessary to make the arrest and bring the deceased within his control. Unless it clearly appears and is proven by the evidence in the cause, that the defendant acted beyond this, he should have been acquitted. State v. Dierberger, 96 Mo. 666; 2 Bish. Crim. Law (6 Ed.), secs. 647, 651; State v. Ross, 142 Mo. 418; State v. Lane, 158 Mo. 572; State v. McNally, 87 Mo. 652. (3) The giving of instruction 4 was error. The transcript does not show a single statement made by any witness that defendant ever made any statement, verbal or otherwise, concerning the homicide. The instruction led the jury to believe that defendant had made statements concerning the killing. (4) The giving of instruction 9, on the part of the State, was error. It omits the question of reasonable doubt. We do no think instruction 3, on the part of the State, cures this error. (5) The information is bad, and charges only manslaughter in the fourth degree, if it charges any offense at all. The information omits the words, ''on his oath aforesaid'' or it omits to charge ''on the affidavit of the said Robert Cox aforesaid.'' State v. Furgerson, 152 Mo. 98; 1 Bish. Crim. Proc. (2 Ed.), sec. 712; State v. Stacy, 103 Mo. 15; State v. Meyers, 99 Mo. 107. (6) The record does not show the filing of an affidavit, by Robert Cox, with either the circuit clerk or the prosecuting attorney, charging the defendant with the crime of murder or any other crime.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) Under the state of the record in this case, it is not fair to assume that the verdict of the coroner's jury was introduced in evidence. (2) The contention that the court erred in admitting the testimony of witness Winkler is without merit. Although the threats

alleged to have been made and related by the witness occurred eighteen months prior to the trial, this is no reason why they were not admissible as evidence. The competency of threats is not affected by remoteness. State v. McNally, 86 Mo. 644; State v. Glohn, 97 Mo. 679; Underhill on Crim. Ev., 392. (3) There was an abundance of testimony tending to show that a resolution had been passed by the town prohibiting the use of the pavements for the purpose of selling fish. There was ample evidence that the deceased had been apprised that it was the desire of the council for him to see that this resolution was in force. The defendant had all the benefit that he would have had, had the council proceeded to enact an ordinance with due solemnity. Much evidence was introduced tending to show that he had been admonished that he must see to it that the provisions of the resolution were not violated and even though it be said that some evidence was excluded on this point, still no harm could have resulted to the defendant on account of this, because the evidence which he offered as to his good faith in the enforcement of the supposed law was overwhelming and undisputed. (4) The complaint lodged against instruction 8, given on behalf of the State, is not tenable. It is a correct enunciation of the law. Besides, the court, in instructions 9 and 11, fully advised the jury as to the defendant's rights as an officer and as to his good faith in making the arrest if he had good reason to believe, and did believe, that there had been an ordinance enacted to prohibit the sale of provisions upon the sidewalk. These two instructions placed the theory of the defense before the jury quite as favorably as the circumstances justified. (5) The court properly struck out that portion of instruction 11 advising the jury that the defendant had the right to take the life of the deceased in the event of the failure of the deceased to submit to arrest. The rule in reference to felonies is that an officer has the right, in making an

arrest, to use all the force necessary to overcome resistance, even to the taking of life; but this rule does not apply as to misdemeanors. State v. Dierberger, 96 Mo. 666; 2 Bishop's Crim. Law, sec. 649. (6) The information was filed, not upon the knowledge, information and belief, or upon the official oath of the prosecuting attorney; but upon the affidavit of Robert Cox. The prosecuting attorney was presuming to act only upon the affidavit of Cox and the defendant was thus advised at the beginning of the information. There was nothing lacking in this information that tends to prejudice the substantial rights of the defendant, and if our statute of jeofails is available in any case, it seems that it ought to be applied here.

BURGESS, J.—At the September term, 1903, of the circuit court of Chariton county the defendant was convicted of murder in the second degree, and his punishment fixed at twenty years' imprisonment in the penitentiary, under an information filed in the circuit court of said county by the prosecuting attorney of said county charging him with having shot to death with a pistol at said county on the eighth day of August, 1903, one Rufus Cox, against the peace and dignity of the State. Defendant appeals.

The facts, briefly stated, are, that at the time of the homicide the defendant was marshal of the town of Dalton in said county. Deceased lived in the county, and on the day he was killed had gone to Dalton, taking some fish with him for sale, and was vending them upon the sidewalk of the town, in violation of a resolution of the board of aldermen of the town which the marshal understood had theretofore been adopted.

When Cox arrived in town he established himself upon the sidewalk and began selling his fish. The defendant, as marshal, advised Cox that an ordinance had been passed prohibiting the use of the pavement for such purposes and requested him to move his fish to

some other place. It seems that the deceased at first demurred; but finally reluctantly removed his fish at the request of the defendant to the inside of a store, and remained in the store until late in the afternoon, when he again placed his fish upon the sidewalk. The defendant again remonstrated with him against using the sidewalk for the purpose, and attempted to get him to remove his fish. This the deceased declined to do, whereupon the defendant attempted to arrest him and lead him away, in pursuance of which defendant laid his hands upon the deceased upon three different occasions and on each occasion the deceased freed himself from the grasp of defendant.

The testimony on behalf of the State tends to show that the deceased did little more than decline to accompany the defendant, and that, because of his declination, and without other provocation, the defendant drew his pistol from his pocket and shot him to death.

The evidence shows that the defendant fired four shots, from the effects of which the deceased immediately died. The evidence on behalf of the defendant tends to show that after he had tried to place the deceased in his custody, the deceased put his hand in his pocket, and that thereupon the mortal shot was fired.

The defendant states on direct examination that he shot deceased in order to protect himself from bodily harm; but his cross-examination shows that he shot the deceased because the deceased failed to remove his hand from his pocket when defendant requested him to do so. His own testimony does not suggest that he was in imminent danger of attack, or that he had any cause to believe that he was in imminent danger. His whole testimony goes to show that he murdered the deceased because the deceased would not remove his hand from his pocket.

There are a number of assignments of error which we do not think of sufficient importance to demand our attention, for in no event could the judgment be re-

versed because of the rulings of the court below upon them, so that we will direct our attention to such matters as seem to require more serious consideration.

The first of these is in relation to the testimony of one James Winkler, a witness for the State, who testified over the objections of defendant to threats made by defendant a year or eighteen months before the trial that he was going to shoot Rufus Cox, having prepared himself with a shotgun for the purpose, and was lying in wait for him, but that the witness discovered defendant and dissuaded from his purpose. The contention is that the threats were too remote to be competent and especially so since there was no evidence of any threats or bad blood on the part of the defendant since that time. But it is well settled that in trials for murder threats made by the defendant towards the deceased are competent, and the nearness or remoteness of the time when made to the date of the homicide do not affect their competency as evidence. [State v. Adams, 76 Mo. l. c. 357; State v. Grant, 79 Mo. l. c. 137; State v. McNally, 87 Mo. l. c. 650; State v. Glahn, 97 Mo. l. c. 689.]

Defendant complains of the action of the court in permitting the attorney for the State to read to the court, in the presence of the jury, the verdict of the coroner's jury. It was not read in evidence, but the attorney for the State asked witness Davenport whether he as a member of the coroner's jury returned a certain verdict. The question was objected to and the objection sustained. No objection was made to the action of the prosecuting attorney in propounding the question. Under such circumstances it should not be assumed that the jury could have inferred that the witness returned such a verdict as the attorney for the State suggested, nor could the jury have inferred that the witness returned any verdict as a member of the coroner's jury. While statements of attorneys in the presence of a trial jury, and questions they pro-

pound, are not evidence, they should not be permitted
to make statements or ask questions from which the
jury could infer that the matter about which such state-
ments may be made, or questions asked, is in fact true.
But we do not think any such inference could have been
drawn by the jury in this instance. Had the witness
answered that he did return such a verdict there would
be more merit in the contention. There is no question
but that the verdict of the coroner's jury was inad-
missible for any purpose, and when the prosecuting at-
torney asked the witness if he returned the verdict,
to-wit: "Upon formal inquiry concerning the facts
and careful examination of the body, we find the de-
ceased came to his death by a wound from a pistol fired
from the hands of Jasper Coleman, of Dalton, Missouri,
and from evidence we find that the killing of Rufus
Cox by Jasper Coleman was unjustified," objection
was made by defendant, and was promptly sustained
by the court. The killing is admitted, but attempted to
be justified upon the ground of self-defense, so that if
defendant was in any way prejudiced by propounding
the question to the witness with respect to the verdict,
and reading the verdict in the presence of the jury,
it was by the use of the words that the killing "was
unjustified," at the conclusion of the verdict, but we
do not think the verdict should be set aside on that
ground. And as there was no exception taken to the
action of the prosecuting attorney in propounding the
question, we do not think he was guilty of such impro-
priety as would justify this court in interfering with
the verdict upon that ground, especially as the trial
court refused to set aside the verdict on that ground.
[Hollenbeck v. Railroad, 141 Mo. 97.]

It is said for defendant that the evidence was in-
sufficient, under all the facts in the case, to convict the
defendant of any offense with which he is charged in
the information.

That the defendant was an officer of the law, and

that the deceased knew him to be such, is clear. It is equally clear under the facts of this case that it was the duty of defendant as such officer to arrest the deceased, and to use sufficient force to accomplish the arrest and bring the deceased within his control, but if he used more force than was reasonably necessary for that purpose and killed Cox, he was guilty of a criminal offense, its grade depending upon the facts and circumstances in evidence. [State v. Dierberger, 96 Mo. 666; State v. Rose, 142 Mo. 418; State v. Lane, 158 Mo. 572.] There was, we think, an abundance of evidence to take the case to the jury upon this feature of the case.

It is also claimed by defendant that the court erred in giving instruction numbered four, because of the want of testimony upon which to base it. It reads as follows:

"4. Court instructs the jury that if verbal statements of the defendant have been proven in the case, you may take them into consideration, with all the other facts and circumstances proved. What the proof may show you, if anything, that the defendant has said against himself, the law presumes to be true, because said against himself, but anything you may believe from the evidence the defendant said in his own behalf you are not obliged to believe, but you may treat the same as true or false, when considered with a view to all the other facts and circumstances in the case."

Conceding that there was no evidence upon which to base the instruction, we are not inclined to think the judgment should be reversed upon that ground. Certainly this could not be done unless the error was prejudicial to defendant, and, while the presumption is that an error made against a defendant when on trial for crime is prejudicial, this presumption may be overcome by the facts and circumstances in evidence if sufficient, and we can but conclude from the facts disclosed

by the record that the error was not prejudicial. In fact, we are unable to see in what way defendant was prejudiced, and we are of the opinion that he was not; hence the error was not prejudicial.

Instruction numbered eight, given on the part of the State, is also complained of. This instruction reads as follows:

"The records and ordinances, and as well also the verbal testimony of Mayor Seigle, have been admitted in evidence before the jury as tending to prove defendant's good faith in attempting to arrest deceased, but the jury are instructed that under the said ordinances and records the selling of fish or an obstruction of the sidewalk did not constitute an offense thereunder and does not justify or excuse the defendant for shooting deceased."

This instruction seems to us to be misleading, in that while it tells the jury that the records, ordinances and the verbal testimony of Mayor Seigle are admitted in evidence as tending to prove defendant's good faith in attempting to arrest deceased, it proceeds to say, "but . . . under said ordinances and records the selling of fish or the obstruction of the sidewalk did not constitute an offense thereunder, *and does not justify or excuse the defendant for shooting deceased;*" and so couples the absence of excuse for shooting deceased with the preceding part of the instruction as to neutralize the question of good faith on the part of defendant in his efforts to make the arrest. In a word, want of excuse, as here used, seems to be inconsistent with good faith.

It is insisted by defendant that instruction numbered nine, given on the part of the State, is erroneous, in that it omits the question of reasonable doubt, but this question is covered by one general instruction given upon the part of the State, by which the jury were told that before they could convict the defendant

they must find him guilty as charged beyond a reasonable doubt. This was all that was necessary. It is not essential that it should be repeated in any other instruction.

It seems that the court struck out that part of instruction numbered eleven, asked by defendant, which told the jury that defendant had the right to take the life of the deceased in the event of the failure of deceased to submit to arrest, and then gave it, and in so doing, defendant insists, committed error. If the attempt to arrest deceased had been for felony committed by him, defendant's contention would be correct, but where the attempt to arrest is for a misdemeanor, or breach of the peace, "it is not lawful to kill the party accused if he fly from the arrest, though he can not be otherwise overtaken, and though there be a warrant to apprehend him. . . . But, as in case of felony, so here, if the officer meet with resistance and kill the offender in the struggle, he will be justified." [1 East, Pleas of the Crown, 302.]

"When, as a general proposition, one refuses to submit to an arrest after he had been touched by the officer, or endeavors to break away after the arrest is affected, he may lawfully be killed, provided this extreme measure is necessary." [2 Bishop's Crim. Law, sec. 647.]

In the case of State v. Dierberger, 96 Mo. l. c. 674, it was said:

"These authors, ancient and modern, lay down the law in substantially the same terms. They show that the protection which an officer is entitled to receive is a different thing from self-defense. The officer, when making an arrest, may, of course, defend himself, as may any other person who is assaulted; but the law does not stop here. The officer must of necessity be the aggressor; his mission is not accomplished when he wards off the assault; he must press forward and accomplish his object; he is not bound to put off the

arrest until a more favorable time. Because of these duties devolved upon him, the law throws around him a special protection. As we said in the recent case of State v. Fuller, ante, p. 165, his duty is to overcome all resistance and bring the party to be arrested under physical restraint, and the means he must use must be coextensive with the duty.'' [State v. Rose, 142 Mo. 418.]

But in the case at bar the deceased was not guilty of either a felony or misdemeanor, nor even of the violation of the town ordinances, and the court in effect so declared. But defendant had the right to arrest for the violation of a town ordinance committed in his presence, had such been the case. Deceased had been selling or offering for sale fish on the sidewalk, to defendant's personal knowledge and in his presence, whereupon he reported the fact to the chairman of the town board, who advised him that it would be necessary to go and kindly ask Mr. Cox to take his fish off of the sidewalk, and, if he refused to do so, it would be his duty to remove the fish from the sidewalk himself, and in case he became loud or noisy or swearing, he should arrest him for disturbing the peace of the town, and in attempting to comply with the direction of the chairman of the board, the homicide occurred, as before stated. It thus seems that defendant had good reason to believe that he had the authority to arrest deceased, and if, when making such arrest, he was acting in good faith, and deceased resisted, he had the right to apply force to accomplish it, and if it became necessary to kill him to save his own life or person from great bodily harm, he had a right to do so. [State v. McNally, 87 Mo. 644.]

As was in effect said in State v. Dierberger, supra, the defendant had a ''right in his effort to make the arrest, to use all force that was necessary to overcome all resistance, even to the taking of life, and if he used no more force than was reasonably necessary to then

and there accomplish the arrest, then he should be acquitted.'' But although defendant may have believed he had authority to arrest the deceased, yet if in so doing he used more force than was reasonably necessary to accomplish the arrest and shot and killed the deceased in malice and with premeditation because he did not remove his hand from his pocket, when commanded to do so by defendant, defendant was guilty of murder in the second degree, unless acting in self-defense. But if defendant used more force than was reasonably necessary in making the arrest, he was guilty of manslaughter in the fourth degree. [State v. Rose, supra.]

But no instruction was asked on manslaughter in the fourth degree, nor was the court's attention called to its failure to instruct upon the law of the case, hence there was no error in its failure to do so. [State v. Cantlin, 118 Mo. 100; State v. Waters, 156 Mo. 132; State v. Furgerson, 162 Mo. 668.]

Defendant insists that the court erred in refusing to give the first, second, third and fourth instructions asked by him. These instructions are all predicated on the theory that the deceased was violating an ordinance of the town when defendant attempted to arrest him, when in fact there was no ordinance prohibiting the sale of fish on the streets of said town, and, were therefore, properly refused.

Another contention is, that the information is bad in that it only charges manslaughter in the fourth degree, if in fact it charges any offense at all.

The objection to the information is that it does not conclude, ''and so the said L. N. Dempsey, prosecuting attorney within and for Chariton county, Missouri, as aforesaid, 'upon his oath' says that he, the said Jasper Coleman, him, the said Rufus Cox, in the manner and form, and by the means aforesaid,' etc., but omits the words, ''upon his oath says,'' etc. Indictments for murder concluding substantially the

same way have frequently been held bad by this court. [State v. Meyers, 99 Mo. 107; State v. Stacy, 103 Mo. 11; State v. Furgerson, 152 Mo. 92.]

At common law all indictments for murder were prosecuted by indictment and concluded as follows: "And so the jurors aforesaid upon their oath do say that the said A. B. him the said E. F. in manner and form aforesaid, feloniously, willfully, and of his own malice aforethought did kill and murder." [1 Wharton's Precedents of Indictments and Pleas, 114; 5 Chitty, Crim. Law, 738; Kelley's Crim. Law and Prac., 309.] In State v. Meyers, supra, SHERWOOD, J., in speaking for the court, said: "All the authorities show the proper conclusion of an indictment for murder marks the feature of that offense which distinguishes it from manslaughter. Without such conclusion, the previous words charged but the latter offense. [2 Bish. Crim. Proc., secs. 536, 548, 550; 3 Chitty's Crim. Law, 737; Ib. 243.] Hence the importance of the conclusion in the count for murder. That conclusion, in order to be valid, charges murder as the result of the previously made allegations." Without such conclusion, the offense charged would be but manslaughter.

In 2 Hawkins' Pleas of the Crown, pp. 369 and 370, it is said: "Having already in the chapter of indictments incidentally shown the principal points relating to this matter, I shall only take notice in this place, that, seeing an information differs from an indictment in little more than this, that the one is found by the oath of twelve men, and the other is not so found, but is only the allegation of the officer who exhibits it, whatsoever certainty is requisite in an indictment, the same at least is necessary also in an infortion and consequently, as all the material parts of the crime must be precisely found in the one, so must they be precisely alleged in the other, and not by way of argument or recital."

In State v. Kelm, 79 Mo. 515, it is said that an

information differs principally from an indictment in this, that an indictment is an accusation found by the oath of twelve men, whereas an information is only the allegation of the officer who exhibits it—citing Bacon's Abr., pp. 167-170, 172; 2 Hawk. P. C., ch. 26, sec. 4. Therefore, being of the same dignity, and for the same purpose, they must in cases of murder be governed in their material allegations by the same law. Therefore, the information is invalid, and being so, the question may be properly raised for the first time in this court, and while it cannot be amended in this court, it may be amended as to matter of form or substance at any time by leave of court before trial. [Sec. 2481, R. S. 1899.] Our conclusion is that an information for murder should conclude, "And so the prosecuting attorney aforesaid upon his oath does say that the said —— him, the said————, in manner and form, feloniously, deliberately, premeditatedly and of his malice aforethought, did kill and murder."

Depositing of the affidavit of Robert Cox with the clerk of the circuit court of the county was sufficient filing within the meaning of section 2477, Revised Statutes 1899. But even if it were not, the failure of the clerk to endorse upon it "filed," and the date thereof, was at most an irregularity which could have been amended at any time before or during trial, and can not be raised for the first time in this court.

For these intimations the judgment is reversed and the cause remanded.

*Brace, C. J., Fox* and *Lamm, JJ.,* concur; *Valliant, J.,* concurs except as to the State's fourth instruction which he thinks is erroneous; *Gantt, J.,* concurs in all that is said except as to the form of the information, from which he dissents; *Marshall, J.,* absent.

### DISSENTING OPINION.

GANTT, J.—As said by my learned brother, I concur in all the conclusions reached by him in the

foregoing opinion, save and except that the information is invalid for the sole reason that the prosecuting attorney in his conclusion does not say, "And so L. N. Dempsey, prosecuting attorney as aforesaid, *upon his oath or official oath, doth say,*" etc. It will be observed that all the words of a proper conclusion of an indictment for murder are employed by the prosecuting attorney, save and except the words, *"upon his oath"* or "official oath."

There is no difference of opinion amongst us as to the necessity of concluding an indictment for murder with the words, "And so the grand jurors *upon their oath aforesaid* do say that he (the said defendant, naming him) willfully, deliberately, premeditatedly and of his malice aforethought, him (the said deceased, naming him) in the manner and form and by the means aforesaid, did kill and murder, against the peace and dignity of the State."

Such was the essential requirement of the common law, and when the people of Missouri in their organic law ordained "that no person shall, for felony, be proceeded against criminally otherwise than by indictment," they meant an indictment as understood at common law. Long prior to the adoption of our Constitution, the word *indictment* had been construed and was well understood by our people, and it had uniformly been held that in an indictment for murder it it was essential that it should conclude, "and so the grand jurors *upon their oath do say,*" etc.

The settled construction from Coke down to State v. Meyers, 99 Mo. 107, I accept, and have followed during my incumbency here.

The question here is, are those words "upon his oath" or "upon his official oath" as necessary to a valid information for murder, since the adoption of the amendment permitting the prosecution of murder by information, as they are in an indictment? The conclusion of the majority of my brethren is that they are,

and that the information in this case is invalid for that reason. With the utmost respect for the judgment of my colleagues on this point, I am constrained by my investigation to take the contrary view, and dissent. At the outset, I agree that both at common law and under our Constitution an information should and must be as certain and definite as to its statement of the essential facts constituting an offense as an indictment, because the defendant is entitled to know the nature and cause of the accusation against him in order to enable him to prepare his defense. [2 Hawkins P. C., p. 369; Wharton's Cr. Pl. (9 Ed.), sec. 87.]

It will hardly be controverted that this information measures up strictly to every requisite of a good common law indictment as to the statement of every fact necessary to advise the defendant of the nature and cause of the accusation against him. The only possible objection urged against it or that can be lodged against it is that the prosecuting attorney, who preferred the information in his official character, did not repeat his conclusion that, *"upon his oath"* or *"official oath,"* he made the charge of murder.

As I understand the reasoning of my brethren, it is held that because an indictment was required to conclude that, "upon the oath of the grand jurors" the charge of murder was made, it must follow that where an information is resorted to by the prosecuting attorney, he must conclude by saying, "upon his oath or official oath," that he makes the charge. I have already adverted to the fact that we have held that an indictment for murder must conclude with a charge that the defendant did kill and murder *upon the oath of the grand jurors,* because we have adopted the common law indictment. The same reasoning necessarily applies to an *information,* for when we incorporated *information* in the Constitution as a mode of prosecuting felonies, we likewise imported it from the common law, and by the same token it must be understood

in its common law sense. [State v. Kyle, 166 Mo. l. c. 303; Ex parte Slater, 72 Mo. 102; State v. Kelm, 79 Mo. 515.]

Bishop in his New Criminal Procedure (4 Ed.), sec. 144, says, "The criminal information should be deemed to be such, and such only, as, in England, is presented by the attorney- or solicitor-general. This part of the English common law has plainly become ours. And as, with us, the powers which in England are exercised by the attorney-general and the solicitor-general are largely distributed among our district attorneys, whose office does not exist in England, they would seem to be entitled, under our common law, to prosecute by information, as a right adhering to their office, and without leave of court."

This statement of Bishop met the express sanction of this court in State v. Kyle, 166 Mo. l. c. 306.

Having settled that the information of our Constitution is the common law information, in the absence of a statute prescribing a form or additional safeguards, let us inquire what was the form of the common law information.

A form for an information for murder at common law is not to be found because murder was prosecuted by indictment of a grand jury, but, obviously, it was the purpose of the people in adopting information as a method of procedure to adopt the common law information as far as applicable to the prosecution of felonies.

Nowhere in the criminal informations of the common law was the attorney-general or solicitor-general or the crown officer of the king required to allege that, "*upon his oath of office,*" or "*upon his official oath,*" he gave the court to understand and be informed that an offense had been committed.

Mr. Bishop in the first volume of his New Criminal Procedure, sec. 712, says, "that only in formal parts, at the *beginning* and *close,* does the information

differ from an indictment.'' But it does differ in *these respects*. The reason, I submit, is this: When the attorney-general in England filed his information, he did so *virtute officii,* and it was an official act and the courts took ex-officio notice of his office and of his right to file and prosecute the offense without leave of the court. As the law never requires a useless thing, why should he have been required to state that his official act was under his official oath?

The answer is, the courts of England never required him to allege that he preferred an information upon his oath of office. Whenever he filed an information, it was his official act and was done under the sanction of his oath of office, and so, I say, the same official character is stamped upon the information filed by the prosecuting attorneys. The courts are bound to recognize their official acts without alleging the nontraversable statement that they have filed their informations under their oaths of office.

Our statute (sec. 2535, R. S. 1899), provides that ''no indictment or information shall be deemed invalid . . . for want of the averment of any matter not necessary to be proved.'' Every circuit court is bound to take judicial notice of the incumbent of the office of prosecuting attorney in the counties in which it is held and it is entirely unnecessary to prove the prosecuting attorney's title to the office or that what he asserts as such officer is under his oath of office. [State v. Sickle, Brayton's Rep. (Vt.) 132; Territory v. Cutinola, 4 New Mex. 160; 3 Burn's Justice, 911; 1 Chitty's Crim. Law, 845-847.]

In Kelm's case, 79 Mo. 515, it was pointed out that ''the textbooks are uniform in defining an information to be an accusation or complaint exhibited against a person for some criminal offense, 'either immediately against the king or against a private person, which, from its enormity or dangerous tendency, the public good requires should be restrained and punished, and

differs principally from an indictment in this, that an indictment is *an accusation found by the oath of twelve men,* whereas *an information is only the allegation of the officer who exhibits it.'* " [5 Bacon's Abr., pp. 169-170-172; 2 Hawkins, P. C., ch. 26, sec. 4.]

The usual and accepted formula was that the attorney-general or the solicitor-general, if the office of attorney-general was vacant, and, in certain cases, the crown officer in the king's bench, as a matter of right and without leave of court, filed the information, and in behalf of the king *"gave the court to understand and be informed* that the defendant, at, etc., committed the particular offense." It was required that he state with certainty all the material parts of the alleged crime and not by way of argument or recital, but it was not necessary for him to state that he made such allegations under his official oath, either in the commencement or conclusion of his information. Whereas, as the grand jury could only make their presentment *under their oath,* it was essential that their indictment should show that they charged the defendant *by virtue of their oath.* As said by Judge SHERWOOD in State v. Meyers, 99 Mo. l. c. 116: "Of course, if a crime is to be charged, it must be done by the grand jurors *upon their oaths.* It does not appear that the *grand jurors* have charged murder in the conclusion before us." In that case the conclusion altogether omitted any charge by the grand jurors *under their oath* but merely stated, "and so said Charles Meyers and John Bogard in manner and form," etc. Whereas, in this case the conclusion is, "And so the said L. N. Dempsey, prosecuting attorney within and for Chariton county, Missouri, as aforesaid, says that he, the said Jasper Coleman, him, the said Rufus Cox, in the manner and form and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, at the county of Chariton, in the State of Missouri, on the

eighth day of August, 1903, did kill and murder, against the peace and dignity of the State.''

The only omission, therefore, that can be suggested is the failure to state that *"upon his oath aforesaid,"* he makes said information and charge. It was pointed out in Rex v. Wilkes, 4 Burr. 2527, by Lord MANSFIELD that there is a difference between informations and indictments.

Indictments are found upon the *oaths* of a grand jury, and can only be amended by themselves. Whereas, "informations are as declarations in the King's suit." I have, after the most careful research, been unable to find any case in which at common law it was ruled that it was essential to the validity of an information that the attorney-general or solicitor-general or the crown officer of the king's bench should state that he made his charge *"upon his oath,"* or *"official oath,"* and as we have no statute prescribing such a form, I think it should be ruled that such an allegation is not essential, and that this objection to this information is not tenable.

That the prosecuting attorneys of the several counties in this State may prosecute by information, as a right adhering to their office, and without leave of the court, is now the accepted law of this State. [State v. Kelm, 79 Mo. l. c. 516-517; State v. Ransberger, 106 Mo. l. c. 145; State v. Kyle, 166 Mo. l. c. 303.]

Prosecuting attorneys are officers whose duties and terms of office are prescribed by law, and the several courts take judicial knowledge of the incumbent of this office in the several counties.

When, therefore, a prosecuting attorney files an information in a criminal cause, he is presumed to do so by virtue of his office, and it is not necessary for him to allege his right to do so.

As he is authorized by his special position to file an information and prosecute the alleged offender, the

presumption is that when, as in this case, he informs the court *in his official character* as prosecuting attorney, it should be held that what *he* alleges is under and by virtue of his oath of office, and no good reason can be seen why he should allege that he makes the information upon his oath or official oath, as the very filing in his official character necessarily implies that he does so in obedience to the obligations of his official oath and in the performance of the duties of his office.

As already said, the information in this case having been made by the prosecuting attorney in his official character, it would add nothing to the security of the defendant for that officer to state that he charged the defendant with the offense "upon his oath" as such officer. All that he alleges, all that he charges, must be conclusively presumed to be upon that oath, which was one of the prerequisites to his qualifications for the office itself.

To guard against groundless and vindictive prosecutions and to secure good faith in the institution of criminal proceedings, the General Assembly has required the information to be verified by the prosecuting attorney or some competent witness, but I submit this is the only requirement of an oath by the prosecuting attorney, and that nowhere is he required to state in the body of his information that it is under oath or official oath.