**STATE of Missouri, Respondent,**

v.

**Howard W. JACKSON, Appellant.**

**No. KCD 27801.**

Missouri Court of Appeals,
Kansas City District.

May 3, 1976.

Joseph P. Teasdale, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

By separate informations, defendant was charged with assaulting Jeffery L. Brooks and Robert L. Brooks, respectively, with a deadly weapon with intent to kill with malice aforethought. Section 559.180, RSMo 1969. Both incidents occurred on June 13, 1974; the assault perpetrated on Robert L. Brooks followed upon the heels of an assault perpetrated upon Jeffery L. Brooks.

Since it appeared that the bulk of the evidence to be presented would be the same with respect to each charge, the state and the defendant stipulated and agreed that both be tried at the same time and submitted as separate offenses. A jury found defendant guilty of both charges but was unable to agree upon his punishment. The trial court sentenced defendant to two ten-year terms in the custody of the Missouri Department of Corrections, same to run concurrently.

Defendant relies upon four points to vitiate the guilty verdicts: (1) a lack of substantial evidence to support them; (2) error in giving a certain instruction; (3) failure to declare a mistrial following several hours of deliberation by the jury; and (4) improper statements by the state during closing argument.

Defendant's attack upon the sufficiency of the evidence is funneled to one narrow aspect—his identity as the person who committed the assaults. A recital of the evidence, with special emphasis on that pertaining to defendant's identity, follows. Defendant had been keeping company with Elizabeth Brooks, daughter of Jeffery L. Brooks and sister of Robert L. Brooks. On the afternoon of June 13, 1974, defendant, while looking for Elizabeth, stopped at a beauty shop located at 51st and Prospect, Kansas City, Missouri, where one of her sisters was employed. A fist fight erupted between defendant and the sister. Another sister and younger brother who were present joined the fracas. The manager of the beauty shop finally broke up the fight. As defendant left the scene, he threatened to kill the two sisters and their brother. Shortly after 7 P.M. a car drove by the house of victim Jeffery L. Brooks. One of the occupants in the car fired three bursts from a shotgun through the front door of the Brooks' home. Jeffery L. Brooks was struck on the side of the face and one of the pellets hit him in the eye, causing a loss of sight in one eye. Jeffery L. Brooks was acquainted with defendant and recognized him as the person who fired the shotgun. Jeffery L. Brooks also identified defendant at the trial as the person who fired the bursts from the shotgun. On cross-examination victim Jeffery L. Brooks testified that the defendant looked the same at the time of the trial as he did on June 13, 1974, and had the "same amount of hair on his head." Victim Robert L. Brooks, after visiting his father at the hospital, was riding in a car driven by his brother-in-law, Melvin Hubbard. At approximately 8:30 P.M. the car they were in stopped for a "red light" at the intersection of 59th and Swope Parkway. While stopped another car pulled alongside them and one of the occupants shot Robert L. Brooks in the left arm with a "pistol". Robert L. Brooks was acquainted with defendant and recognized defendant as the person who shot him. Robert L. Brooks also identified defendant at the trial as the person who shot him. On cross-examination, Robert L. Brooks testified that defendant looked the same at the time of the trial as he did on June 13, 1974, except for the fact that "his hair was a little lighter". Melvin Hubbard also was ac-

quainted with defendant and recognized defendant as one of the occupants in the car that pulled up alongside his car. On cross-examination Hubbard testified that the color of defendant's hair on June 13, 1974, was "a little different—it was a reddish brown kind of a color". Hubbard also testified on cross-examination that defendant had an "Afro" hairdo on June 13, 1974, "like [it] is now". However, he was unable to recall whether defendant had a beard on June 13, 1974.

Defendant took the stand in his own behalf and testified that he was at home playing cards with friends throughout the entire period during which the two assaults occurred. His wife and friends corroborated his alibi. Defendant, although admitting his presence at the beauty shop during the afternoon of June 13, 1974, gave a substantially different version of the fight that occurred. Defendant identified a picture which the police took of him during the early morning hours of June 14, 1974, shortly after his arrest. The picture was offered and admitted into evidence. Defendant testified that the picture accurately portrayed his appearance on June 13, 1974. He further testified that on June 13, 1974, he had a beard, his hair was "straight" rather than "Afro" style, and his hair was not a "light color". He implied by his testimony that he was clean shaven and wearing his hair "Afro" style at the time of trial.

Defendant argues that the picture taken by the police constituted unassailable proof that he had a beard and was wearing his hair "straight" on June 13, 1974; therefore, the testimony of the two victims and Hubbard relative to his identity had no probative value because of its patent inconsistency with his appearance on June 13, 1974. Defendant caps this argument by asserting that since their testimony was so lacking in probative value, no substantial evidence existed to link him with the assaults.

■ For some unknown reason defendant did not see fit to make the picture so strongly relied upon available to this court on appeal. For all this court knows, what

defendant has characterized as a beard on June 13, 1974, may have been nothing more than a stubble of whiskers. Additionally, it is not beyond the realm of possibility that he recombed his hair after the assaults and prior to his arrest. Defendant has failed to demonstrate on appeal that his appearance at the time of trial as opposed to June 13, 1974, was so disparate that the testimony of the witnesses who identified him was utterly lacking in probative value as a matter of law. The jury had the benefit of seeing both the picture and defendant in person at the time of trial, and hearing the testimony of the various witnesses. Weighing the evidence and judging the credibility of the witnesses rested with the jury and their judgment will not be indiscriminately intruded upon by this court on appeal. *State v. Williams,* 376 S.W.2d 133 (Mo.1964); *State v. Tucker,* 451 S.W.2d 91 (Mo.1970); and *State v. Graham,* 527 S.W.2d 936 (Mo. App.1975). Defendant's first point is ruled against him.

■ Any present claim of error associated with the giving of Instruction No. 5 (MAI–CR 2.10—Parties: General Responsibility for the Conduct of Others) will not be considered since it was never preserved for appellate review. At the trial defendant lodged a *general* objection against all the instructions except those which were given at his request. He did not lodge any specific objections against Instruction No. 5 at the time of trial, nor did he lodge any objection against said instruction, general or specific, in his motion for new trial. Rule 20.03 requires, in part, that "specific objections to given or refused instructions and verdict forms shall be required in motions for new trial unless made on the record at the time of trial." Defendant's indifference to any semblance of compliance with Rule 20.03, supra, precludes appellate consideration of his second point.

■ Defendant next complains that the trial court erred in not honoring his request for declaration of a mistrial because of the jury's inability to arrive at a verdict follow-

ing several hours of deliberation after it received the case. The jury received the case at approximately 10:50 A.M. on the third day of trial. At 12:40 P.M. the jury temporarily ceased deliberating for lunch. The record fails to disclose when it resumed deliberations following lunch. Nevertheless, at 2:45 P.M. the trial judge received the following note signed by the foreman of the jury: "We are unable to reach a unanimous decision." By way of response, the trial judge summoned the jury to the courtroom and read Instruction No. 12 to them (MAI–CR 1.10—Instructions After Extended Deliberation by the Jury). Defendant did not object to Instruction No. 12; nor did he move for a mistrial or take any action whatsoever at this point. At 5:45 P.M. the jury was again summoned to the courtroom by the trial judge, at which time he inquired, "Do you still stand in the same position that you did when you were down here last time, or have you made progress?" Speaking through their foreman, the jury advised the trial judge, "We are closer to being unanimous than we were before." The trial judge then asked them, "Do you feel that further time would be beneficial to helping you arrive at a verdict?" The foreman, again speaking for the jury, replied, "I believe it would." Thereupon the jury returned to the jury room for further deliberation. At this point, defendant, for the first time, objected to the jury's protracted deliberation and moved that a mistrial be declared and the jury discharged, which was overruled. At 6:25 P.M., the jury returned verdicts finding defendant guilty of both assaults.

■ The length of time which a jury is permitted to deliberate rests largely within the discretion of the trial judge. *State v. Shelby,* 333 Mo. 610, 62 S.W.2d 721, 726 (1933); *State v. Burton,* 355 Mo. 792, 198 S.W.2d 19, 22 (1946); *State v. Hampton,* 317 S.W.2d 348, 358 (Mo.1958); and *State v. Summers,* 362 S.W.2d 537, 541 (Mo.1962), *rev'd on other grounds.* Practical considerations underlie investing the trial judge with this discretion. He is in a superior

position to sense whether further deliberation remains viable or becomes coercive. Both the state and the accused have a valuable stake in his exercise of this discretion and appellate courts are properly reluctant to interfere absent a clear showing of abuse. No abuse of discretion has been shown by defendant in this case. The overall time that elapsed between submission of the case and rendition of the verdicts was not per se coercive. *State v. Rose,* 142 Mo. 418, 44 S.W. 329 (1898), *rev'd on other grounds; State v. Shawley,* 334 Mo. 352, 67 S.W.2d 74 (1933); and *State v. Summers,* supra. The jurors in this case did not face an easy task. After two days of trial they had a tremendous amount of evidence to sift. To their credit, they obviously took their obligation as jurors seriously and gave more than superficial consideration to defendant's alibi defense. The trial judge, as borne out by the record, was acutely conscious of avoiding a coercive situation and, to his credit, did so. Defendant obliquely argues that when the jury was sent back to the jury room a little after 5:45 P.M. to deliberate further, any deliberation thereafter was fraught with coercion because of apprehension or fear of being sequestered overnight. This argument is made without even a scintilla of evidence to support it. In order for it to prevail, this court would have to arbitrarily demean the conscientious manner in which the jurors in this case undertook their sworn duty. This it is unwilling to do. Defendant's third point is ruled adversely to him.

■ Finally, defendant asserts that he should be granted a new trial because of improper statements made by the state during closing argument. The point itself fails to mention the nature of the argument complained about. The argument portion of defendant's brief, however, reveals that his complaint is directed toward a portion of the state's closing argument which he never objected to at the time or mentioned in his motion for a new trial. The court eschews this point because it was never preserved for appellate review. *State v.*

*Clark,* 412 S.W.2d 493, 497 (Mo.1967); *State v. Martin,* 484 S.W.2d 179, 180 (Mo.1972); and *State v. Jackson,* 511 S.W.2d 771, 775 (Mo.1974).

Judgment affirmed.

All concur.