MUMFORD *v.* STARMONT.

1. False Imprisonment — Street Car Employés — Arrest by Police—Dangerous Condition of Railway.

Municipal officers cannot justify their arrest of a street car motorman on the ground that the overhead system of the railway was so out of repair as to be a public nuisance, and had been so declared by the common council, and that operation of the cars increased the danger from it, where, at the time of the arrest, the controller of the car had been taken from the motorman and the car could not be started without it, and the whole system might have been stopped by detaching the feed wires.

2. Same—Evidence.

Plaintiff in false imprisonment may state that he felt humiliated by the arrest.

3. Same.

In false imprisonment by a street car motorman for arrest to prevent him from running his car, it is proper to exclude evidence that he was subsequently complimented by his employer for his effort to run the car.

4. Same.

Defendant cannot show that it was the custom to search prisoners, and that plaintiff was not searched.

5. Same—Damages—Instructions.

An instruction basing plaintiff's recovery on what an average

man would suffer from a similar injury, rather than on what plaintiff actually suffered, is not prejudicial where there is nothing to indicate that plaintiff suffered less than the average man.

Error to Ingham; Wiest, J. Submitted January 6, 1905. (Docket No. 23.) Decided February 28, 1905.

Case by Wheeler Mumford against Adolph M. Starmont and James F. Hammell for false imprisonment. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*O. J. Hood* (*Russell C. Ostrander* and *Black & Reasoner*, of counsel), for appellants.

*O. G. Tuttle* and *Searl & Monfort*, for appellee.

HOOKER, J. The defendants were respectively chief of police and mayor of the city of Lansing. The plaintiff recovered a verdict and judgment for $100 against them, and they have brought the case to this court by writ of error.

The action was for false imprisonment, based upon an arrest and detention of the plaintiff by the police, under directions of the defendants. The record shows that the plaintiff was a motorman upon a street car operated upon the streets of Lansing. There was proof tending to show, and the court charged the jury, that the overhead system of the street railway was so out of repair as to be dangerous to persons and horses using the streets, owing to the frequent falling of the wires, and that it was a public nuisance. The common council had, by resolution, so declared it, and directed that it be abated. There was evidence to the effect that the running of trolley cars increased the danger by causing the wires to break and fall. The mayor thereupon gave notice to the railway company that it must cease running cars while the wires remained in this dangerous condition. The cars were stopped, and did not run again that day. Some of the feed wires were

cut. On the evening of that day the plaintiff learned of the difficulty between the city and the company, but having been ordered to report for duty on July 2d, the next day, he did so, and ran his car south on Washington avenue. On his return trip he met two cars at the intersection of the Michigan avenue branch with the Washington avenue line, being the principal business corner of the city. He stopped his car and started to take his controller cranks to the other end of the car, when defendant Starmont took them. The plaintiff took hold of the rope to reverse the trolley, when defendant Starmont took hold of him, and handed him over to a policeman, giving orders to hold him until Starmont should direct his discharge. He was taken to the police station, and, with other motormen who had been arrested, had an interview with the city attorney, who told them that they had resisted an officer and broken city ordinances, that unless they should promise not to run the cars again they would have to be arraigned for trial, and asked them to decide. Plaintiff said that he would run a car every 15 minutes if given the opportunity, for such were his instructions. Before dinner the men were discharged, after being taken before a magistrate. The defendants stated that it was their intention to stop the cars, and that to accomplish that it was necessary to restrain the motormen for a time. The judge directed the jury to find a verdict for the plaintiff, and assess his damages, which was done. Counsel have discussed several assignments of error, among them the following:

1. That the court should have directed a verdict for the defendants.

2. That, if not, the cause should have been left to the jury upon the question of plaintiff's right to recover.

The testimony conclusively shows that the defendants took the cranks or controllers used in starting plaintiff's car, and that without them he could not have afterwards started the car. Notwithstanding this, they took plaintiff into custody and detained him at the police station for several hours, in a vain attempt to secure a promise that

he would not run the car if discharged. Then he was discharged. The car was stopped, and could not be run so long as the police retained custody of it, and there was no justification, so far as the facts disclosed by this record go, for the arrest and detention. The taking of the plaintiff before a magistrate was a further wrong, for there was no ground for the claim that he had been guilty of the offense of resisting an officer. The only thing that he is shown to have done after the controllers were taken from him prior to his arrest was to reverse the trolley of the car. That put the car in readiness to be run, but nothing more, and plaintiff made no effort to start the car. Indeed, he could not have started it, for the policemen had the necessary appliances. The only excuse for the detention of the plaintiff was that he would not promise not to run the car if liberated, and that it was more convenient to arrest and detain all of the motormen than to put a man in charge of each car, it appearing that seven or eight motormen were thus treated.

The defendants seek to justify their action upon the ground that the condition of the overhead construction of the street railway line was a public nuisance, in that it was a menace to persons using the highway, and that it was the defendants' duty, both by virtue of their office, and by reason of the action of the common council which had declared it a nuisance, to abate the danger by preventing the operation of cars until the wire should be replaced by new. Defendants had forbidden and prevented the railroad company from making temporary repairs, being apparently of the opinion that they would be ineffective.

The condition of the wire was not admitted to be so bad as to make the same a nuisance, and it is not clear that the judge was justified in instructing the jury that it was a nuisance; but these defendants cannot complain of such instruction, for the reason that it is what they claimed, and was distinctly favorable to them. Apparently the judge chose to eliminate that question, in view of his intention to direct a verdict for plaintiff.

The undisputed facts in the case are that the defendants

arrested and detained the plaintiff, as a means of preventing the running of cars, or, as they state, abating a nuisance. If the circumstances shown were such as to justify the abatement of a nuisance, it could have been done by removing the dangerous wires, or by cutting the same off from the power house from whence the current was furnished. The stopping of the cars was not essential to this. If the danger existed only by reason of the running of the cars, cutting the wire would have been an effective method of stopping the cars, or they might have been stopped by taking possession of or disabling them without cutting the feed wire. Either of these methods would have been preferable to the wholesale arrest of the motormen. The evidence shows that the plaintiff's car was disabled through the seizure of the controllers. Counsel cite no case recognizing the method taken of abating a nuisance, or preventing injury to citizens, where the person arrested is not chargeable with a public offense or threatened breach of the peace. The conduct of the defendants was so clearly in excess of necessity that we find it unnecessary to discuss at length the authority of municipal officers as to summary abatement of nuisances. Under the admitted facts the court could have done no less than to direct a verdict for the plaintiff. This being so, it becomes unnecessary to refer to the other questions pertaining to that subject, and it is only necessary to inquire whether errors were committed in relation to the amount of damages suffered.

We think it was not error to allow the plaintiff to state that he felt humiliated by the arrest. It was not error to exclude evidence that subsequently he was complimented by his employer for his effort to run the car. Neither was it error to exclude evidence that it was the custom to search prisoners, which custom was not followed in this case. The court was justified in saying that there was no evidence tending to show that plaintiff resisted an officer.

In the course of his instructions, the court said to the

jury that they should give the plaintiff actual damages, and that they were to say "what damage, if any, the average man would suffer, and to award plaintiff, if anything, such an amount as would compensate him for his *actual damages* sustained, and no more." In one instance he varied this by saying:

"The sense of shame and mortification, of wrong and of outrage, for which the plaintiff may recover, is not limited to the actual time he was under restraint, but includes all such sense of shame, mortification, wrong, and outrage as it can be said the average man under like circumstances might have expected to experience for all time, arising from such arrest and detention as has been shown. No witness has placed a money standard on injured feelings, humiliation, sense of outrage, and mental suffering arising from an unlawful arrest and imprisonment, and no witness can do so. To do that is solely your province. The law has no other remedy for an action for wrong than to compensate, so far as it can by way of money, for the injury done by one man to another. The facts and circumstances surrounding the doing of the unlawful act are to be considered by you, and you are to consider as best you can, from all the evidence, what sense of shame, mental suffering, humiliation, and sense of outrage the average man under similar circumstances might reasonably be expected to sustain, and award the plaintiff the amount thereof as his damages in this case."

It is insisted that the measure of damages should not have been what the average man would suffer under the same circumstances, but what the plaintiff had suffered. Undoubtedly the latter is the rule, but in this case there is nothing to indicate that this plaintiff suffered less than the average man, and no injury is discernible from the instructions. We fail to discover any unfairness in the charge.

The judgment is affirmed.

CARPENTER, MCALVAY, GRANT, and BLAIR, JJ., concurred.