# THE STATE v. HIRAM MONTGOMERY, Appellant.

### Division Two, November 29, 1910.

1. **RESISTING ARREST: Unnecessary Force: Passion: Double Theory of Guilt.** Where a deputy constable, who without a warrant has made an arrest, is being tried for killing a bystander, who interfered as he drew his pistol and undertook to arrest another bystannder, the State is entitled to have the question of his guilt of manslaughter submitted on two theories, where the evidence warrants it: First, that the fatal injuries were inflicted in a violent passion upon reasonable provocation, but not in necessary self-defense; and, second, that without such passion, he, as an officer in resisting an attempt of the

deceased bystander to rescue a prisoner, unnecessarily took the life of deceased by using more force than seemed reasonably necessary.

2. ———: ———: Unwarranted Limitations: Instruction. An instruction for defendant, basing his right as an officer to use all force reasonably necessary, even to the taking of life, to resist the attacks of a bystander from rescuing a prisoner, upon the fact that said bystander "obstructed, interfered with or resisted in any manner, by his words, or acts, the defendant as such officer in his efforts to convey said prisoner," who had been arrested without a warrant, goes far beyond the proper limitations of official authority and protection.

3. ———: ———: ———: ———: Converse for State: Consistent. And an instruction given on behalf of the State, presenting the converse of said instruction given for defendant, and not inconsistent therewith, is not error against defendant, although both, when read together, declare the law in terms more favorable than defendant is entitled to.

4. SELF-DEFENSE: Officer. Defendant, a deputy constable, had arrested a woman for a breach of the peace in his presence, at his hotel, and on the way to the magistrate's office met her husband, who objected to her arrest and resisted the officer, and was himself arrested, and turned over to another deputy. The woman becoming sick, defendant took her to a room, and the other deputy proceeded with her husband towards the office of the justice of the peace. On the way he was hailed by a company of men, one of whom asked him if he had a warrant, and receiving a negative reply told him he had better get a warrant and be on the safe side. Just then the defendant came up, and was much angered at what the man had said, and drawing his revolver told him he would take him too. The deceased then came up and seized the revolver with one hand and with the other tried to hold defendant, who turned the revolver towards his breast and fired, killing him. Deceased was unarmed, and four police officers were of the company and standing within a few feet. Held, that deceased's assault upon defendant, if such it may be called, was of such a character as to show an entire absence of that peril or danger or apparent danger to defendant which would justify the taking of life on the ground of self-defense.

5. ARREST: Unnecessary Force. In view of the foregoing facts it is held that defendant did not move upon deceased as an officer of the law, but rather as a man who, besides being an officer, had a private grievance, and, fired with passion, recklessly and needlessly took a human life; and he cannot be discharged on the ground that his act in shooting deceased (who seized defendant's revolver to prevent him from need-

lessly shooting the other man, who in no wise had resisted arrest) was done in the discharge of his official duties and without the use of more force than seemed reasonably necessary.

6. ———: **Force Necessary: To Be Determined by Officr.** The officer is not the sole arbiter of the amount of force necessary to be exercised in making an arrest. He is not to be excused for taking a human life in arresting another if he uses more force than seems to be reasonably necessary. He cannot judge arbitrarily in the matter. He can use no more force than seems reasonably necessary under all the circumstances, and it is for the jury to determine whether or not he did.

Appeal from Lawrence Circuit Court.—*Hon. T. C. Johnston,* Judge.

AFFIRMED.

*W. B. Skinner* and *Val Mason* for appellant.

Under such circumstances it was the duty of the court to instruct the jury that the defendant had the right to use such force as seemed to him (defendant) to be reasonably necessary in the premises to maintain his authority, and conduct his prisoner to a place of arraignment and trial, when his lawful authority was assailed or a rescue attempted, and this the court did not do in instruction 4. State v. Dierberger, 96 Mo. 666. It is true that the court, at the request of the defendant, did give instruction 8, that the defendant had a right to use such force as seemed to him to be reasonably necessary to accomplish the arrest and convey his prisoner to the office of the justice of the peace, but this does not cure the failure of the court to properly define manslaughter, and the lawful privilege of an officer in the discharge of his official duty.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

(1)  The complaint lodged against instruction 4 completely loses its force when that instruction is read

in connection with instructions, numbered 9 and 8, given at the instance of appellant. It is fundamental that instructions must be construed together, and although a single instruction may be incomplete or technically erroneous, yet if, when taken together, the instructions form, as a whole, a correct announcement of the law on that subject, they are not erroneous, and afford no basis for reversal. State v. McKenzie, 177 Mo. 715. That portion of instruction 4 against which criticism is leveled, correctly states the general rule of law applicable to such subjects, while instructions 9 and 8 are explanatory and qualifying, fully explaining the general rule announced in number 4, and specifically applying it. These instructions correctly declared the law and placed the case before the jury in a light most favorable to appellant. State v. Lane, 158 Mo. 587; State v. Rose, 142 Mo. 418; State v. Bateswell, 105 Mo. 609; State v. Coleman, 186 Mo. 162; State v. Dierberger, 96 Mo. 666. (2) Relative to the assignment that the verdict is against the weight of the evidence, it is sufficient merely to say that the record discloses an abundance of evidence which, if believed, not only sustains the verdict of fourth degree manslaughter, but would fully support a finding of guilty on a much higher degree of the crime. The appellant's own testimony is sufficient to warrant the verdict. This court will not convert itself into a trier of facts, and undertake to find a different result from that of the jury. State v. Matthews, 202 Mo. 147; State v. McCullough, 171 Mo. 574; State v. Tetrick, 199 Mo. 100; State v. Williams, 199 Mo. 137.

KENNISH, J.—On the 9th day of September, 1908, the prosecuting attorney filed in the criminal court of Greene county an information charging the defendant, Hiram Montgomery, with the crime of murder in the first degree. The information was in due form, and charged that defendant shot with a pistol

and killed George Mitchell at said county on the 23d day of August, 1908.

On the application of the defendant the venue of the cause was changed to Lawrence county, where, at the March term, 1909, upon a plea of not guilty, the defendant was tried and convicted of manslaughter in the fourth degree, his punishment being assessed at imprisonment in the penitentiary for a term of two years. After unavailing motions for a new trial and in arrest, judgment was pronounced in accordance with the verdict, and the defendant appealed to this court.

On the part of the State the testimony tended to prove that on August 23, 1908, on Sunday morning about 9 o'clock, John Montgomery, a deputy constable, and John Denton, his prisoner, were standing on the east side of Campbell street near the public square in the city of Springfield, Missouri. Denton had been arrested without a warrant for a breach of the peace and the deputy constable was taking him as a prisoner to the office of a justice of the peace. On the west side of Campbell street, just opposite where the deputy constable and his prisoner were standing, several persons were congregated, among them Mr. Allen, a court stenographer, three city policemen and two city councilmen. One of the persons thus assembled called to Denton to come over to where they were standing. Denton and Montgomery went across the street, and the defendant, who as deputy constable had shortly before arrested the prisoner and turned him over to John Montgomery, followed but a few minutes thereafter. Allen asked the officers in charge of Denton if they had a warrant for Denton's arrest, and was informed they had not. Allen then told them they had better get a warrant and be on the safe side. The defendant seemed much angered at Allen's interference and drawing and cocking his revolver told Allen he would take him too. As soon as the revolver was drawn on Allen,

Mitchell came up and seized the revolver with his left hand and was trying to hold defendant with his right hand. Defendant turned the revolver toward Mitchell's breast and fired two shots, the first of which entered the body and inflicted a mortal wound upon Mitchell, from which he died about two days later. The second shot did not strike Mitchell. The policemen and by-standers disarmed the defendant of his revolver and he then drew a billy, which, after a struggle, was also taken from him.

The defendant was a witness in his own behalf and his testimony tended to show that he was keeping a hotel in Springfield, Missouri, and that on the morning of the difficulty, as deputy constable, he arrested Denton's wife in his (defendant's) hotel for a breach of the peace committed in his presence. When taking her to the office of the justice of the peace, and before he had left the hotel, he was met by her husband; the latter objected to and resisted the taking of his wife as a prisoner, and he also was placed under arrest by the defendant. On the way to the office of the magistrate the wife became ill and the defendant took her to her room and directed John Montgomery, who had come upon the scene, to take Denton on to the office of the justice of the peace. As soon as the defendant had taken Denton's wife to a room he followed and found John Montgomery with the prisoner on the west side of Campbell street, where Allen and others were advising him to procure a warrant for Denton's arrest. When the defendant came up he spoke to Denton and told him to go with him. Denton refused and thereupon Mitchell interfered and told the defendant he could not take Denton without a warrant. The defendant then told Mitchell he would take him too, and as defendant went to lay his hand upon Mitchell the latter assaulted the defendant, according to this testimony, throwing one arm around the defendant's neck and seizing the revolver with the other hand, and defendant

then shot to protect himself. The defendant's testimony was corroborated by other witnesses.

Evidence was also offered tending to prove that Mitchell had threatened defendant sometime before the homicide and that the threats had been communicated to the defendant; also that just before the shooting Mitchell had said to one of the bystanders that if he would stay with him, he (Mitchell) would see that the officers did not take the prisoner without a warrant, and that the bystander answered that he would stay with Mitchell.

The case was submitted to the jury upon instructions authorizing a conviction of murder in the second degree or of manslaughter in the fourth degree, and authorizing an acquittal upon the ground of self-defense or upon the theory that the defendant killed the deceased while acting in the necessary discharge of his official duties. The court also gave such general instructions upon reasonable doubt, good character, credibility of witnesses, etc., as were applicable to the evidence.

Appellant complains that the court erred in giving of its own motion and at the request of the State instruction number 4. This instruction is as follows:

"If the jury believe from the evidence that George Mitchell resisted the defendant, while the defendant had one Denton in custody and attempted to rescue one Denton from the defendant and attempted to prevent defendant from taking said Denton before a magistrate, and if you believe from the evidence that said Mitchell, to effectuate said purpose, assaulted defendant, and if you believe from the evidence that to prevent the accomplishment of such purposes on the part of Mitchell, the defendant resisted said Mitchell, and if you believe from the evidence that in making such resistance and in his efforts to retain his prisoner, the defendant unnecessarily took the life of deceased, then the jury will find the defendant guilty of manslaughter

in the fourth degree, and assess his punishment as directed in these instructions.''

In order to properly understand appellant's contention as to the point under consideration it is necessary to set out the following instructions, numbered 8 and 9, given on behalf of the defendant:

"8. The court instructs the jury that if the defendant had been duly appointed as a deputy constable, then the defendant was a peace officer, and as such it was his right, not only to command the peace but to enforce such command by arresting, without warrant, anyone committing a breach of the peace in his presence, and by taking such offender before the proper officer to be dealt with according to law.

"If, therefore, you find from the evidence that the defendant Hiram Montgomery, had been appointed a deputy constable of Campbell township, in Greene county, Missouri, and that one John Denton had committed a breach of the peace in defendant's presence and that defendant had arrested said Denton on said charge, and either alone or with the aid and assistance of another deputy constable, to-wit, John Montgomery, if you find he was a deputy constable, was conveying said Denton to the office of C. A. Hubbard, a justice of the peace of said Campbell township, to be dealt with according to law, and while so engaged, the deceased, George Mitchell, either alone or acting with others, obstructed, interfered with or resisted in any manner, by his words, or acts, the defendant as such officer in his efforts to convey said prisoner to the office of said justice of the peace, then the defendant had the right, under the law, to use all the force which to him seemed reasonably necessary under the circumstances to overcome all resistance to the exercise of his authority in the premises, even to the extent of taking the life of said Mitchell, and if in such circumstances he shot and killed Mitchell, he is justified under the law, and you should find him not guilty.''

"9.   In determining whether or not defendant used more force than was reasonably necessary in shooting Mitchell, the deceased, you are instructed that the law does not require an officer in making an arrest or in conducting the prisoner before the proper officer to be dealt with according to law, when resistance is offered to the exercise of his authority, to determine with absolute precision what force is necessary to overcome such resistance, it is only required that he should not use any more force than may seem to him to be reasonably necessary for the purpose."

It should also be prefaced that in the first part of instruction number 3 the jury were instructed in substance that if the defendant killed the deceased in a heat of passion upon reasonable provocation, or because of defendant's apprehension of great personal injury from Mitchell, then the law presumed that the defendant took the life of Mitchell by reason of such passion and without malice, and the jury could not convict of murder. And in the second part of instruction numbered 3 the court told the jury that if the defendant killed Mitchell in a violent passion, as stated in the first part of the instruction, and the infliction of the injuries upon Mitchell by the defendant "were not necessary to the self-defense of the defendant, or to discharge his duties as an officer in the premises, as explained in these instructions, you will find the defendant guilty of manslaughter in the fourth degree," etc.

From the foregoing instructions and what has been stated it is apparent that the State relied upon two separate and distinct theories of the evidence as warranting a verdict of manslaughter in the fourth degree, namely, that the fatal injuries were inflicted by the defendant (1) in a violent passion upon reasonable provocation, but not in necessary self-defense, and (2) though not inflicted in such passion but as an officer resisting an attempt of Mitchell to rescue a pris-

·oner from the defendant, and that in resisting such at-
tempt the defendant "unnecessarily took the life of
the deceased" by the use of more force than seemed
reasonably necessary.

In giving instruction number 4 it is evident that
the court sought to present to the jury that phase of
the case authorizing a conviction of manslaughter in
the fourth degree if the jury should find that, while in
the discharge of his official duties as deputy constable,
the defendant in resisting an assault made upon him
by Mitchell, took the life of Mitchell, and in so doing
used more force than seemed reasonably necessary.
The evidence clearly warranted an instruction sub-
mitting the case to the jury upon that theory.   In the
case of State v. Rose, 142 Mo. 418, a case in many re-
spects similar to the case in hand, BURGESS, J., speak-
ing for this court, at page 426, said: "If defendant,
without malice, intentionally shot and killed deceased
while resisting arrest, and in so doing used no more
force or violence than was reasonably necessary to ac-
complish his arrest, the homicide was justifiable. [2
Bishop, New Crim. Law, secs. 647, 650.] But if he used
more force than was reasonably necessary for that pur-
pose, and shot deceased while resisting arrest, he was
guilty of manslaughter, in the fourth degree.   [R. S.
1889, sec. 3477, supra.]" And in the case of State v.
Coleman, 186 Mo. l. c. 160, this court said: "It is
equally clear under the facts of this case that it was
the duty of defendant as such officer to arrest the de-
ceased, and to use sufficient force to accomplish the
arrest and bring the deceased within his control, but
if he used more force than was reasonably necessary
for that purpose and killed Cox, he was guilty of a
criminal offense, its grade depending upon the facts
and circumstances in evidence. [State v. Dierberger, 96
Mo. 666; State v. Rose, 142 Mo. 418; State v. Lane, 158
Mo. 572.]"   See, also, Kelley's Crim. Law and Prac.,
sec. 524.

The defendant was given the full benefit of the law upon the right of an officer to use all force reasonably necessary in the lawful exercise of his official duties; even to the taking of Mitchell's life, by instructions numbered 8 and 9 given on behalf of the defendant. Indeed instruction number 8, in basing the right of the defendant to use such force upon the fact that Mitchell "obstructed, interfered with or resisted in any manner, by his words or acts, the defendant as such officer in his efforts to convey said prisoner," etc., went far beyond the proper limitations of official authority and protection as prescribed by the decisions of this court and the general law upon the subject.

Instruction number 4, of which complaint is made, properly sets forth the facts hypothetically in the converse form of defendant's instruction number 8, and upon a finding of which facts the jury was directed to return a verdict of manslaughter in the fourth degree. After thus reciting the facts, namely, the defendant's custody of Denton as a prisoner; the assault of Mitchell upon defendant in an attempt to rescue the prisoner; the resistance of such assault by the defendant in his efforts to retain the prisoner, etc., then instead of submitting a finding of such facts to the jury as a basis from which to determine whether the defendant in so resisting Mitchell used more force than seemed reasonably necessary, and if so that he was guilty of manslaughter in the fourth degree, the jury was instructed that if "in making such resistance and in his efforts to retain his prisoner, the defendant unnecessarily took the life of the deceased," they should find him guilty of manslaughter in the fourth degree. Although this instruction, as applicable to the evidence, is not skillfully drawn, it cannot be said that it is inconsistent with instruction number 8 given on behalf of the defendant, and when both instructions are read together they declare the law upon the subject in terms more favorable than the defendant was entitled to.

In the case of State v. Mathews, 98 Mo. 125, this court said: "Instructions are to be read together as a whole, and when consistent, their meaning is to be collected from the whole context, and not from detached instructions or phrases in them, and if, when so treated, their meaning is obvious, the legal principles announced correct, and applicable to the case, they are safe guides for a jury." And in the case of State v. McKenzie, 177 Mo. at page 715: "It is fundamental that instructions must be construed together. It is apparent that the instructions here complained of are but qualifications of the instructions given at the instance of defendant. The usual and ordinary method, and, we think, the better one, of declaring the law of self-defense, is to incorporate in one instruction the entire subject-matter; but to separate the declarations of law, as applicable to self-defense, does not constitute error, if, taken together, they form, as a whole, a correct and harmonious announcement of the law on that subject."

Reading the two instructions in accordance with the rule thus announced, we find in instruction number 4 a direction to the jury that if defendant was in charge of a prisoner and Mitchell assaulted defendant in an attempt to rescue the prisoner and in resisting such assault defendant unnecessarily took the life of Mitchell, he was guilty of manslaughter in the fourth degree. On the other hand the jury were told in instruction number 8 that if the defendant in resisting such assault upon him by Mitchell used no more force than seemed to him to be reasonably necessary, the killing was justifiable. It must follow that if the killing of Mitchell was necessary in the exercise of defendant's duty as an officer, and as defined by instruction number 8, the defendant did not "unnecessarily take the life of the deceased," and the jury could not have found him guilty under instruction number 4. This is the only meaning which a jury of ordinary in-

telligence could have given to the instructions when read together. Besides, in instruction numbered 3, submitting the case upon the theory of manslaughter, if the killing was done in the heat of passion upon reasonable provocation, the guilt of the defendant was predicated upon a finding that "the infliction of such injuries were not necessary to the self-defense of the defendant, or to discharge his duties as an officer in the premises, as explained in these instructions." The defendant thus had the full benefit of the law declaratory of his rights as an officer in instructions numbered 4 and 8 when read together, and in instruction numbered 3 the attention of the jury was expressly directed to such rights as are set forth in instruction number 8.

For the foregoing reasons we hold that the appellant was not prejudiced in his substantial rights in the giving of instruction number 4.

Counsel for appellant at the oral argument and in their brief earnestly insisted that the verdict is against the evidence, and that under all the evidence the taking of Mitchell's life was justifiable, (1) on the ground of self-defense, and (2) because the act was done in the discharge of defendant's official duties and without the use of more force than seemed to him reasonably necessary.

The first of these complaints requires but brief consideration. The uncontradicted evidence shows that Mitchell was unarmed; there were four other police officers standing within a few feet; Mitchell's interference or assault upon the defendant, if it may be so called, was of such character as to show an entire absence of that peril or danger or apparent danger to the defendant which, under the law, would justify the taking of life on the ground of self-defense.

Neither is there merit in the second contention that the killing was necessary in the discharge of the defendant's duty as deputy constable. Giving full force to the

principle of law that "the officer, when making an arrest, may, of course, defend himself, as may any other person who is assaulted; but the law does not stop here; the officer must of necessity be the aggressor; his mission is not accomplished when he wards off the assault; he must press forward and accomplish his object; he is not bound to put off the arrest until a more favorable time" (State v. Dierberger, 96 Mo. l. c. 674); and on the other hand recognizing the limitation which the law places upon the right of the officer in the use of force under such circumstances, namely, "but if he used more force than was reasonably necessary for that purpose, and shot deceased while resisting arrest, he was guilty of manslaughter in the fourth degree" (State v. Rose, 142 Mo. l. c. 427), let us briefly review the facts of this case upon which the defendant must rely to bring his case within the protection of the principle of law invoked.

The defendant was the proprietor of a hotel; he was also a deputy constable. On the morning of the homicide there was a difficulty at the hotel between the defendant's wife and the wife of Denton, which, in the eyes of the defendant as an officer and proprietor of the hotel, amounted to a breach of the peace; of the two thus engaged in a quarrel the defendant placed Mrs. Denton only under arrest; when Denton interfered in behalf of his wife, he was also arrested and placed in the custody of another deputy constable to be taken before a magistrate, while the defendant took Mrs. Denton, who in the meantime had become ill, to her room. The defendant did not permit the disinterested deputy to take the prisoner to his destination, but soon followed and overtook them where they had stopped on the street and were talking to a small assemblage of bystanders. While these bystanders were intermeddling and offering advice to the officer and prisoner in the matter which did not concern them, just

as such persons always have done and always will do on such occasions, yet they were good-natured and gave no indication of hostility or violence. The defendant was angry when he came up, and when Allen, the court stenographer, suggested that to be "in the clear" it would be safer to procure a warrant for the arrest of Denton before taking him further, the defendant, without calling upon any of the bystanders to assist him, as he had a right to do; without calling upon the other four peace officers present to assist him, as it was their duty to do, drew his revolver, cocked it and presenting it at Allen told him he would take him too, although Allen had in no manner refused to submit to arrest or to comply with any command. The weight of the evidence shows that at this juncture when Mitchell seized the weapon with one hand and with the other the defendant, he did so not to injure or assault the defendant, but to prevent the shooting of Allen. The defendant, in the struggle, turned his weapon to Mitchell's breast and fired the fatal shot. He was immediately disarmed of the revolver, whereupon he drew his club, which was also taken from him after a struggle.

Viewing the defendant's conduct as connected with this homicide and as disclosed by the testimony of the eye-witnesses, the conclusion is irresistible that he did not move upon Mitchell as an officer in the name of the law, but rather as a man who, besides being an officer, had a private grievance, and, fired with passion, recklessly and needlessly took a human life. To say that the taking of the life of an unarmed man in the presence of five officers of the law in broad daylight, and under the circumstances of this case, was justifiable on the ground that no more force was used than was reasonably necessary in the discharge of the official duty of the slayer, is to disclose a misconception of the law applicable in such cases, and to place entirely too low an estimate on the value of human life.

An officer in the discharge of his duty, representing in his person the majesty of the law, is entitled to protection, and the law does protect him while acting as an officer and within the law, but he must always remember that the life of a human being is sacred in the eyes of the law; that it is the first and greatest right of a citizen, and that he must not be deprived of it except under circumstances of extreme necessity. Such necessity did not exist in this case.

In appellant's brief much stress is laid upon the right of an officer in making an arrest or preventing a rescue "to use such force as *seemed to him* (*defendant*) to be reasonably necessary in the premises to maintain his authority," etc.

The force reasonably necessary to be used by the officer in such cases must be determined from the surrounding circumstances and conditions as they appear to the officer at the time he is required to act, but it must not be understood that the defendant is the final arbiter in such case, and that if the taking of life seemed necessary to him the question is then foreclosed against further inquiry upon a trial for homicide. In Wharton on Homicide (3 Ed.), section 502, the law upon this subject is stated as follows: "It has been held that the amount of force and the employment of the usual means of making an arrest and detention within the compass of the means ordinarily resorted to for securing one found committing a criminal act must be left to the discretion and judgment of the officer, where he is engaged in discharging a public and official duty, and is actuated by no ill-will. But the prevailing rule seems to be that the law does not clothe an officer with authority to judge arbitrarily of the necessity of killing a prisoner to secure him, or of killing a person to prevent the rescue of a prisoner, and that he cannot kill unless there is necessity for it; and that whether there is such a necessity is a question of fact for the jury in a prosecution for the kill-

ing, to be determined from all the evidence of the case, a doubt as to the nonexistence of such necessity entitling the officer to an acquittal."

In the case of State v. Lane, 158 Mo. 572, this court approved an instruction which declared the law in harmony with the prevailing rule as thus stated by Wharton, and the Lane case is cited by that author in support of the text above quoted.

We have examined the record before us, not only as to the two errors assigned, but as to the entire proceedings of the trial, and have reached the conclusion that the defendant was accorded a fair trial and that reversible error does not appear in the record. Accordingly the judgment of the trial court is affirmed. *Gantt, P. J.,* and *Burgess, J.,* concur.