STATE OF MISSOURI at the relation and to the use of MARTIN DONELON, Appellant, v. PHIL G. DEUSER and FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation.—134 S. W. (2d) 132.

Division Two, December 14, 1939.

*James J. Milligan, John H. McNatt, Frank L. Johnson* and *Redick O'Bryan* for appellant.

*Lyon Anderson, Herbert W. Ziercher* and *A. E. L. Gardner* for respondents.

WESTHUES, C.—Relator, Martin Donelon, brought this suit against the defendants, Phil G. Deuser, sheriff of St. Louis County, Missouri, and the Fidelity & Deposit Company of Maryland, a corporation, surety on the sheriff's bond, to recover damages for injuries alleged to have been sustained by reason of an assault committed upon plaintiff by Clarence R. Zahner, a deputy sheriff. A trial resulted in a verdict for plaintiff in the sum of $15,000. The trial court granted a new trial at defendants' request because of an alleged erroneous instruction given on the measure of damages. Plaintiff duly appealed.

Plaintiff, in his petition, did not seek punitive damages. The portion of the instruction questioned read as follows:

"The Court instructs the Jury that, if your verdict is for the plaintiff, under the other instructions in this case, then you may take into consideration, any and all bodily pain and mental anguish, if any, which you find and believe from the evidence plaintiff has suffered, as a direct result of the assault, if you do so find; and the Jury may also consider the sense of shame, mental suffering, humiliation, mortification, wrong, and outrage, if any, which you may find and believe that the plaintiff has suffered, now suffers, or will in the future suffer, as a direct and proximate result of the assault if any."

The facts, as supported by plaintiff's evidence, may be briefly stated as follows: On the night of November 14, 1933, plaintiff and three of his companions were in Wellston, Missouri. They had been drinking beer and at about 2:00 A. M. started home. They proceeded on their way walking in twos. Plaintiff and a young man named Burns were walking together, and as they passed some people a difficulty arose between Burns and these parties. Burns was struck on the head with a bottle containing whiskey. The bottle broke and Burns was cut on the head. The blow also caused him to stagger toward the street. Plaintiff followed Burns intending to aid him and prevent him from being struck by cars. About that time the deputy sheriff, Zahner, appeared on the scene and without any investigation as to who was causing the disturbance struck plaintiff over the head with a club, referred to in the evidence as a "policeman's billy." Evidence introduced by plaintiff justified the inference that Zahner struck plaintiff a number of times and then placed him in a car. He was taken to the Clayton jail where he was held for about twenty hours then discharged. If the evidence of plaintiff and his witnesses be true, and the jury found that it was, then the assault was unprovoked, unjustified and brutal. The effect of the blows upon plaintiff will be discussed later in the opinion on the question of the excessiveness of the verdict.

Most of the authorities cited by respondents in support of the contention that the instruction was erroneous are negligence cases. We must remember, however, that this is not a negligence case but a case based upon a deliberate and unjustified assault. Respondents insist that since plaintiff did not seek punitive damages the words "wrong" and "outrage" should not have been in the instruction. Before we proceed to examine the authorities let us take a glance at Webster's New International Dictionary, second edition. There we find synonyms to "outrage" to be affront, insult, abuse; and synonyms to "insult" to be indignity and outrage. With the word "wrong," in law, we find: "A violation of the legal rights of another; an invasion of right to the damage of the party who suffers it; esp., a tort." Bearing in mind the above definition and synonyms let us see what the authorities have to say with reference to the use of the words wrong,

insult, outrage, indignity, etc., in instructions on compensatory damages in cases of assault. In the case of Mumford v. Starmont, 102 N. W. 662, 139 Mich. 188, the court approved an instruction on actual damages in a false arrest case which contained the following:

" 'The sense of shame and mortification, of wrong and of outrage, for which the plaintiff may recover, is not limited to the actual time he was under restraint, but includes all such sense of shame, mortification, wrong, and outrage as it can be said the average man under like circumstances might have expected to experience . . .' "

In Wadsworth v. Treat, 43 Maine, 163, an assault case, the trial court had instructed the jury not to assess punitive damages. However, in the instruction on compensatory damages the court informed the jury that the plaintiff " '. . . is not only entitled to recover for any actual injury received by the wrongful act of the defendant, but if you find that it was willfully and wantonly done, also for the mental anxiety, the public degradation . . .' "

The Massachusetts Supreme Court in Smith v. Holcomb, 99 Mass. 552, also an assault case, tersely stated:

"The insult and indignity inflicted upon a person by giving him a blow with anger, rudeness or insolence, occasion mental suffering. In many cases they constitute the principal element of damage."

The trial court had instructed the jury that plaintiff could "also recover for the insult and indignity inflicted upon him by reason of the blows given him by the defendant."

Other cases in line with the above rulings are: Krehbiel v. Henkle (Iowa), 133 N. W. 115, 129 N. W. 945; Philadelphia, B. & W. Railroad Co. v. Crawford (Md.), 77 Atl. 278; McKinley v. The C. & N. W. Railroad Co., 44 Iowa, 314. In the latter, an assault case, the court approved an instruction which stated that the plaintiff may recover—

" '. . . also, the bodily pain and suffering, if any, resulting from the injuries received, *and for the outrage and indignity put upon him; . . .*' "

The court in the course of its opinion said:

" 'Outrage and indignity' as used in the instruction must mean and include mental anguish, or pain as distinguished from bodily suffering; and as a recovery is not confined to such mental pain as arises from, or is caused by the injury inflicted, the question is fairly presented whether mental anguish arising from the nature and character of the assault, constitutes an element of compensatory damages. . . .

"A careful examination of the authorities will disclose the fact that the weight of adjudicated cases is in favor of the proposition, that mental anguish arising from the nature and character of the assault is an element of compensatory damages."

The distinction between assault and negligence cases is obvious, for example: (A) meets (B) upon a public street and without

cause or excuse slaps (B) in the face. The damages (B) sustained by reason of the physical injuries may be small as compared with the damages resulting from the character of the assault. In other words the humiliation suffered by (B) on account of the insult and outrage perpetrated upon him by (A) would be an element of compensatory damages. The latter element of damages would be lacking if the injury were the result of negligence. Thus far we have only considered cases from other states, but our Missouri courts have announced the same doctrine. See Stewart v. Watson, 133 Mo. App. 44, 112 S. W. 762, l. c. 764, where the court said:

"It is quite clear that bodily pain, mental suffering, humiliation, and insult, resulting from an assault and battery of the nature before us, are necessary and natural concomitants of the act complained of. They are, therefore, general damages, and in no sense special."

That case cites Sutherland on Damages (3 Ed.), section 418. That ruling was followed in Edelman v. Wells, 242 S. W. 990, l. c. 991 (3).

The authorities cited by respondents are: Boyd v. Mo. Pac. Ry. Co., 236 Mo. 54, 139 S. W. 561; Barth v. Kansas City El. Ry. Co., 142 Mo. 535, 44 S. W. 778; State ex rel. Central Coal & Coke Co. v. Ellison, 270 Mo. 645, 195 S. W. 722. In each of the above cases the plaintiff based his action on negligence. As we pointed out, cases of that nature are not in point. In the other case cited, Morgan v. Durfee, 69 Mo. 469, the plaintiff sued to recover damages from the defendant alleging that plaintiff's father came to his death as the result of an assault committed by the defendant. This court reversed a judgment for plaintiff on the ground that the defendant was not liable on the theory that at the time he committed the alleged assault he was legally defending his person and his place of business. Judge SHERWOOD was the author of the opinion. Judge HENRY concurred in point one of the opinion, that was, that the defendant had the right to defend his person and his place of business. Judge HENRY did not concur in the balance of the opinion. Judge NORTON concurred only in the result, while Judge NAPTON and Judge HOUGH dissented. The opinion thereof did not have a majority vote except on the point mentioned above. It is obviously not an authority for the defendants. We therefore rule that the instruction given in this case was not erroneous.

▮ Respondents brief other points not mentioned by the trial court as grounds to affirm the action of the trial court in sustaining a motion for new trial. The first of these was based upon plaintiff's instruction two, relating to the amount of force an officer may use in making an arrest. The instruction informed the jury that if the deputy sheriff ". . . believed and had good reason to believe that the plaintiff, Martin, L. Donelon was participating in said disturbance and fight, and believed that it was his duty to cause the arrest of

plaintiff, Martin L. Donelon, yet if your further find and believe from the evidence that plaintiff Martin L. Donelon made no forcible resistance to the said Clarence R. Zahner arresting him and taking him into custody; and, you further find and believe, that the said Clarence R. Zahner used more force under the circumstances than was reasonably necessary to arrest the plaintiff, Martin L. Donelson, and did unnecessarily and without cause, strike and beat the said plaintiff, . . .''

Respondents' point is, that the instruction should have read that plaintiff could not recover unless the deputy sheriff used more force than appeared to him to be reasonably necessary. In 6 Corpus Juris Secundum, 825, section 23b, the general rule is thus stated:

"A peace officer or other person duly empowered is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order, or to overcome resistance to his authority."

[See also 5 C. J. 638, sec. 36; State v. Montgomery, 230 Mo. 660, 132 S. W. 232, l. c. 234; State v. Coleman, 186 Mo. 151, 84 S. W. 978, l. c. 981; Espenan v. Carona, 179 So. (La. App.) 119; Moore v. Foster, 180 So. (Miss.) 73; Kalb v. Luce, 279 N. W. (Wis.) 685, rehearing denied, 280 N. W. 725.] The trial court gave an instruction at defendants' request which embodied defendants' theory, that is, the instruction informed the jury that Zahner ''. . . had the right, and it was his duty, to use such force as appeared to him at the time to be reasonably necessary to overcome the resistance put forward by said Martin Donelon in so resisting arrest; . . .''

Plaintiff's instruction, above quoted, and the defendants' instruction were not inconsistent. They were certainly not unfavorable to the defendants. The case of State v. Montgomery, supra, 230 Mo. 660, 132 S. W. 232, l. c. 235, presented almost an identical situation and the court there ruled ''. . . when both instructions are read together they declare the law upon the subject in terms more favorable than the defendant was entitled to.''

Respondents also contend that plaintiff's Instruction Number One was erroneous as submitting to the jury a question of law. The instruction told the jury that if it found from the evidence that plaintiff was not violating a criminal law or committing a misdemeanor then Zahner had no right to arrest him. The jury could not have been misled by this instruction. The dispute in the evidence was whether the plaintiff had, at the time of the assault, participated in the fight which occurred upon the sidewalk. It was conceded that if he had been so engaged he would have been guilty of a misdemeanor. Defendants' instruction upon this point, which was given by the court, went into great detail. The jury was therefore well instructed and the only question for it to decide was whether plaintiff took part in the fight, which was purely a question of fact.

Respondents also assert that the trial court's action in granting

636

a new trial may be sustained upon the ground of misconduct of plaintiff's attorney in asking improper questions of a witness and in making improper statements during his argument to the jury. The trial court did not sustain the motion for a new trial on this ground. The record disclosed that on each occasion where misconduct was charged the trial court sustained defendants' objections and duly admonished the jury as requested by the defendants. The granting of a new trial or declaring a mistrial for misconduct during the progress of a case rests largely within the discretion of the trial courts. That discretion was not abused in this case.

■ Now as to the excessiveness of the verdict. Plaintiff, prior to the assault, was a young man twenty-three years of age and had been employed for a number of years at the Grand Leader Relay Station during the day and had attended high school at night. He was earning $15 per week. His duties required him to route bundles of merchandise for delivery throughout St. Louis and St. Louis County. This was a responsible position and he had performed his work in a very satisfactory manner up to the time he received the injuries at the hands of the deputy sheriff. Immediately thereafter, while he attempted to work for about two weeks, he was unable to perform his tasks. He was forgetful, sullen and in constant pain. Plaintiff then was forced to quit work. His doctor advised and ordered him to be taken to Desloge hospital for observation. From there he was sent to the City hospital where he showed definite signs of being mentally unbalanced. Later he was sent to the Farmington State hospital for treatment, which is an insane asylum. He was discharged from this hospital in April, 1934. Plaintiff, while in the hospital, due to his mental condition had the habit of scratching his legs, which resulted in an infection necessitating an operation. At the time of the trial plaintiff had fully recovered from his mental affliction but he still suffered from high blood pressure which was far above the normal. The overwhelming weight of the evidence, as found in the record, supported plaintiff's contention that the insanity and high blood pressure were directly due to the assault. His health, prior to the assault, had been excellent. Plaintiff will also continue to suffer humiliation throughout his life as the result of the assault and the fact that he was an inmate of an asylum. Plaintiff also lost a considerable sum in earnings and expense of doctor bills. The amount of damages to be assessed in a personal injury case is primarily a question for a jury. Courts should not interfere unless the verdict is grossly excessive or inadequate. In this case the record does not show that the verdict was excessive.

The order of the trial court sustaining a new trial should be set aside and the court directed to reinstate the verdict and enter judgment thereon. It is so ordered. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.