**Jeffrey Alan DUENSING, Pro Ami, Respondent,**

v.

**Edward A. HUSCHER and Huscher Drug Store, Inc., Appellants.**

**No. 53097.**

Supreme Court of Missouri, Division No. 2.

July 8, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 9, 1968.

William T. Bellamy, Jr. and Bellamy & Bellamy, Marshall, and William Aull, III, Aull, Hader & Sherman, Lexington, for respondent.

Newton R. Bradley and Bradley, Skelton & Schelp, Lexington, W. K. Gibson and Martin, Gibson & Gardner, Sedalia, for appellants.

HENRY J. WESTHUES, Special Commissioner.

Jeffrey Alan Duensing, a minor, by his father, Robert Duensing, as next friend, filed suit in the Circuit Court of Lafayette County, Missouri, against Edward A. Huscher and the Huscher Drug Store, Inc., for damages for bodily injuries alleged to have been caused by delivering to plaintiff's parents suppositories containing a barbiturate drug when, in fact, aspirin suppositories had been prescribed.

The petition was in two counts. In the first count, plaintiff sought $25,000 actual damages. In the second, plaintiff asked for punitive damages in the sum of $100,000.

Plaintiff claimed that defendant Edward Huscher was an employee of the defendant Huscher corporation but was not a registered pharmacist, that aspirin suppositories had been prescribed by Dr. Robert Best, that Edward Huscher filled the prescription and, in doing so, violated Section 338.260, RSMo 1959, V.A.M.S.

Defendants claim that Edward Huscher did not violate any law in delivering aspirin suppositories and that he "delivered or intended to deliver aspirin 2-grain suppositories for plaintiff which item is a pre-packaged, proprietary drug or medicine, as authorized and provided by Section 338.010 *as* the Revised Statutes of Missouri and that at all times said defendant acted in good faith and in the honest belief that his action was lawful and in compliance with said statute, and if said package did contain seconal suppositories as alleged by plaintiff, it was not due to the fault or negligence of the defendants, and by reason thereof plaintiff is not entitled to recover herein * * *."

It was agreed that seconal suppositories contain a barbiturate drug.

A trial was had before court and jury resulting in a verdict and judgment for plaintiff against both defendants on Count One in the sum of $22,000, and on Count Two in the sum of $10,000 against each defendant, or a total of $42,000.

Motion for a new trial was overruled and defendants appealed from the judgment against them.

Defendants have briefed eleven points. We find a number of duplications and, therefore, we shall consider the points without designating them by number.

Most of the points briefed concern procedural matters such as voir dire examination of the jurors, admission of evidence, instructions, and arguments of counsel. Points with reference to the merits present questions of whether plaintiff sustained substantial injuries, whether, under the law and the evidence, punitive damages were authorized, and whether the verdicts, for both actual and punitive damages, are grossly excessive.

The evidence supports the following statement of what occurred.

On the morning of July 27, 1965, plaintiff, a child 2½ years of age, became ill with a cold, sore throat, and fever. His mother gave him some aspirin but the child could not retain it. About five o'clock that afternoon the child was taken to Dr. Robert Best at Higginsville, who administered a penicillin shot. Plaintiff was taken home. A short time thereafter plaintiff became pale and stiff, acting as if he wanted to vomit. His parents became

alarmed and took him back to Doctor Best, who advised that the child had had a convulsion due to high fever and recommended that the child be given aspirin suppositories rectally. Doctor Best called the defendant drugstore and defendant Edward Huscher answered the telephone. The doctor told Huscher to prepare aspirin suppositories and to place directions as to their use on the package, and that the Duensings would call for them. Edward Huscher obtained a container, supposedly containing aspirin suppositories, removed the label, and prepared a label with the Huscher Drug Store name, a prescription number, and the doctor's directive, and placed the label on the container. This container, which was supposed to contain twelve 2-grain aspirin suppositories, was delivered to plaintiff's mother. The mother, as advised by Doctor Best, immediately inserted rectally one of the suppositories. During the night, four or five more suppositories were inserted as directed. Plaintiff apparently did not improve and, at about 4:00 a. m., he appeared to be unconscious and Doctor Best was called. Upon his advice, the child was taken to Mercy Hospital at Kansas City where he remained from about 6:30 a. m., July 28, until noon, July 31, 1965, when he was taken home. At Mercy Hospital, the examination of plaintiff and various tests disclosed that he was suffering with barbiturate intoxication and that he had received about ten times the amount for a child of his age. A number of the suppositories were examined and found to be barbiturate suppositories. A test by the Industrial Testing Laboratory showed a like result.

We shall state additional facts where necessary to dispose of the points briefed.

During the voir dire examination plaintiff's counsel informed the prospective jurors that the plaintiff was asking punitive damages. Counsel explained the purpose and nature of such damages and then asked the following question: "In this regard, I'm going to ask the jury whether or not— if the Judge instructs you on punitive damages in this case, whether or not you have any reservations in your mind against applying the law? In other words, do you have anything in your conscience that opposes that proposition of law that will prevent you from carrying out and giving a verdict based upon the law as given to you by Judge Cook?"

■ Defendants' objection to this question was overruled. Defendants claim that such question violated Civil Rule 70.01(a), V.A.M.R., requiring all instructions to be in writing and, further, that the inquiry was an attempt by plaintiff to get the jury to commit itself to award punitive damages. Among the cases cited by defendants we find State v. Smith, Mo., 422 S.W.2d 50. The question of law before us was considered by the court in that opinion at 422 S.W. 2d 67, 68, syllabi 29–31. This court at page 68 quoted with approval the following, taken from State v. Mosier, Mo., 102 S.W. 2d 620, l.c. 624: "'The correct procedure is for counsel to ask the members of the panel whether, if the court later instructs them in a specified manner, they have any opinion or conscientious scruples such as would prevent them from returning a verdict accordingly.'" The same question was considered at length by the St. Louis Court of Appeals in Littell v. Bi-State Transit Development Agency, Mo.App., 423 S.W.2d 34, l.c. 36, 37, 38. The procedure outlined in the above cases was substantially followed in the case before us. We rule that the trial court did not err in permitting the inquiry.

Evidence of two doctors was introduced by plaintiff that barbiturates are habit-forming drugs and used on occasion by persons to commit suicide. Defendants say this evidence was immaterial, that plaintiff did not claim to have formed a habit of taking the drug or to have attempted to commit suicide.

■ We are of the opinion that the evidence was admissible to prove the nature and harmful effect of the drug.

Plaintiff, to recover damages, was required to produce evidence that the drug was in fact harmful and in fact did produce injury. The questioned evidence tended to support the claims of plaintiff. Defendants claim that the evidence caused bias and prejudice against them. That fact, if it be a fact, did not render the evidence inadmissible. 31A C.J.S. Evidence § 186, p. 498; Ingram v. Prairie Block Coal Co., 319 Mo. 644, 5 S.W.2d 413, l.c. 418[9]; State v. King, Mo., 334 S.W.2d 34, l.c. 38, 39[5, 6].

Plaintiff claimed that Edward A. Huscher violated Section 338.170. Defendants claimed that Section 338.170 was not violated because Edward, in filling the prescription, did so under the provisions of Section 338.010 under the direct supervision of his father who was a licensed pharmacist. Further, it is claimed that Edward did not at any time claim to be a registered pharmacist and that at no time did the drugstore use an exhibit or sign indicating that he was a registered pharmacist in violation of Section 338.170.

Plaintiff, to support his charge, offered evidence that there were signs on display in the drugstore that a pharmacist was on duty when no registered pharmacist was in fact present and, further, that the signs on display were placed with the name of Edward Huscher so as to indicate that he was a registered pharmacist. Plaintiff introduced evidence that Edward Huscher filled the prescription for the aspirin suppositories when his father was not present, and evidence that Edward filled prescriptions on other occasions when no registered pharmacist was in the drugstore.

Defendants introduced evidence contradicting the above evidence of plaintiff.

Plaintiff, to sustain the charge of a violation of the law, was required to prove that defendant Edward Huscher filled the prescription ordered by Doctor Best and did so without the supervision of a registered or licensed pharmacist. State v. Holbert, Mo.App., 399 S.W.2d 142.

Defendants contend that the evidence that Edward Huscher filled prescriptions on occasions other than the one in question was not admissible and that the court erred in this respect. Such evidence, in our opinion, was properly admitted on that disputed vital issue. Charles F. Curry & Co. v. Hedrick, Mo., 378 S.W.2d 522, l.c. 536[18, 19]. Such evidence was in direct contradiction of defendants as to the course of conduct with reference to having a registered pharmacist present at all times when prescriptions were filled. 32 C.J.S. Evidence § 581, p. 710.

Defendants contend that the trial court erred in not directing a verdict for the defendants as to both counts of the petition.

With reference to the first count, we find that there was substantial evidence to justify a finding that plaintiff sustained damages. We shall consider the evidence as to actual damages when disposing of defendants' point that the verdict was excessive.

Defendants say in their brief that punitive damages cannot be sustained in this case, "because on Count II, the admission of plaintiff in his opening statement that defendants did not intend to sell, for plaintiff's use, suppositories containing a barbiturate, precluded submission of a claim based on legal malice."

Plaintiff at no time claimed that Edward Huscher intended to sell to his parents, for plaintiff's use, barbiturate suppositories. No actual malice or ill will on the part of Edward Huscher was shown or claimed.

Plaintiff asked for punitive damages on the theory that defendant Edward Huscher filled the prescription in question without the supervision of a registered or licensed pharmacist and, in performing that act, violated Section 338.010, supra, and that there was a sign on display in the drugstore indicating that Edward was a registered pharmacist in violation of Section 338.170, supra. There was evidence to sustain a finding that both sections of the statute

had been violated. Plaintiff claims punitive damages were authorized on implied malice.

■ There is a conflict of authority on this question; that is, whether actual malice or ill will must be present to authorize punitive or exemplary damages in cases of implied malice. 25 C.J.S. Damages § 123 (4), pp. 1141–1144. At page 1142 it is stated: "Legal malice, as distinguished from actual malice, authorizes the award of exemplary damages in some jurisdictions, and in this connection the intentional doing of a wrongful act without just cause or excuse may constitute or show legal malice." Many Missouri cases are there cited in support of the rule stated. Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095, l.c. 1098[4] [5], 37 L.R.A., N.S., 533; Booth v. Quality Dairy Co., Mo. App., 393 S.W.2d 845, l.c. 850[9–11]. In the case before us defendant Edward Huscher well knew that he was not a registered pharmacist and had no authority to fill prescriptions unless supervised by a registered pharmacist. Further, defendants knew that when no registered pharmacist was on duty the law required the display of a sign informing the public of that fact. The dispute in this case was that defendants claimed and introduced evidence that the law was not violated. Plaintiff's evidence was to the contrary. The court, by instructions, submitted these issues to the jury and the jury found in favor of plaintiff. We rule that under the law and the evidence plaintiff was entitled to actual damages and also to punitive damages. The trial court did not err in refusing to direct a verdict for defendants.

■ Defendants offered and the court refused to give an instruction numbered 16. This instruction in substance was that if the jury found Edward Huscher acted in good faith and in the honest belief that the act was lawful, then the act was not malicious, citing the case of Booth v. Quality Dairy Co., supra, 393 S.W.2d 845. The only evidence offered on this point was that Edward Huscher and other witnesses testified that aspirin suppositories are a product that can be sold over the counter without a prescription. That fact may be conceded. However, the transaction in this case was not an over-the-counter sale. Edward Huscher removed the original label from the package or container, prepared a label of the Huscher Drug Company, wrote the doctor's directions and a prescription number thereon, and placed this label on the container. Defendants' witness Earl Watkins, a state pharmaceutical consultant, when asked whether, if Edward Huscher did what he claimed he did as ordered by Doctor Best, he would be violating Section 338.010, supra, answered: "If he did this other than under the direct supervision of a Registered Pharmacist he would be in violation." The court did instruct on this subject matter, which we deem sufficient and in conformity with the law. The given instruction read as follows: "The word 'maliciously' as used in these instructions does not mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse."

We rule there was no error in refusing to give Instruction 16 as requested by defendants.

Defendants contend the trial court erred in a ruling during defendants' closing argument to the jury. A witness, Hubert Rutherford, testified that defendant Edward Huscher had filled a prescription for him at a time when no registered pharmacist was present in the drugstore. The complained-of subject matter came about when counsel for defendants, in commenting on this evidence, argued as follows:

"Just think; and they took a fellow named Rutherford, who you don't know— some of you don't; I certainly don't know him; he never brought a bottle in here to show you any Huscher label on it, the Huscher number, and he didn't tell you whether he had a powder, pill, liquid, or what it was, or a capsule, and the only way that we found out about it is when

they put Mrs. Duensing back on the stand and she says she got a couple of those pills. Where are they? Did you see them? Why, all she had to do—she has been holding that Exhibit 1 out of that box for two days; we left ours out where you can see them. Where are those pills?

"Now, people, you can stop this just real quick; I just don't think—

"MR. AULL: (Indicating.)

"MR. BRADLEY: Just a moment, your Honor, please. There is no evidence of this; improper.

"MR. AULL: You said, where are the pills and we gave them to him.

"MR. BRADLEY: They are not in evidence.

"THE COURT: All right.

"MR. GIBSON: I think they should be reprimanded, your Honor, for—

"THE COURT: Well, you ask where they were.

"MR. GIBSON: They are not in evidence.

"THE COURT: That is true, they are not in evidence.

"MR. GIBSON: I think they should be reprimanded for that conduct.

"THE COURT: The reprimand will be denied."

We are not justified in granting defendants a new trial because of the court's ruling. The trial judge may have concluded that the argument goaded plaintiff's counsel to produce the pills and may not have deemed the matter prejudicial to the defendants. 88 C.J.S. Trial § 194, p. 379; 88 C.J.S. Trial § 199, p. 392.

Defendants' point that the verdicts are excessive has given us some concern. First, we shall consider the actual damages. The evidence justifies a finding that if plaintiff had received the treatment prescribed by Doctor Best, that is, the aspirin suppositories, plaintiff's fever may well have subsided and it would not have been necessary to take him to Mercy Hospital for treatment. Further, the evidence justifies a finding that the suppositories containing barbiturate caused plaintiff much pain and suffering. The hospital records show that plaintiff, on arrival, was in a critical condition. He was unconscious for about 30 hours. The treatment to eliminate the barbiturate intoxication was painful. Plaintiff was subjected to forced intravenous fluids, a Foley catheter was used, and a vaporizer was inserted in his nose. Plaintiff was given an electroencephalographic study or test which disclosed a mildly abnormal condition. Doctor Best testified that an overdose of a barbiturate has a depressing effect on the central nervous system and sometimes causes respiratory collapse. The doctor was asked: "What is 'respiratory collapse' in lay language?" He answered: "Well, there is a center in the brain that makes a person breathe; of course, this is entirely an involuntary process, and this can be depressed enough to cause cessation of breathing." The doctor testified that to determine permanent brain damage of a child it would be necessary to give the electroencephalographic test and to observe its behavior over a prolonged time.

Mr. and Mrs. Duensing, plaintiff's parents, testified that since the experience at Mercy Hospital, while apparently physically well, plaintiff is a changed person; that he is very nervous and irritable and cries often; that he wets the bed as often as five times a week; that before his illness plaintiff was a normal child, not irritable or nervous, and seldom wet his bed.

The defendants, to refute this evidence, had plaintiff examined by Dr. C. G. Leitch on January 17, 1967. Dr. Leitch had been practicing medicine since 1927. He had had much experience in various fields of medicine and training in pathology. He was eminently qualified. He testified that he examined plaintiff's records at Mercy Hospital and obtained a complete history from

his parents. He gave plaintiff a thorough physical examination and found nothing wrong with him physically or mentally. He testified that an electrocardiographic test disclosed the heart to be normal. However, the doctor did not give plaintiff an electroencephalographic test or study.

We have omitted many details contained in the hospital records. This record showed that the treatment of plaintiff to rid his body of the barbiturate was anything but mild. Considering the critical condition at the time plaintiff entered the hospital, the result was very good.

■ The question of compensatory damages is primarily for a jury. Courts should not disturb a verdict as to an amount unless it is grossly excessive. Each case must be considered and determined upon its own state of facts. Much depends on the life expectancy of the person injured, the nature of the injury, and the incapacity resulting from the injury. Stephens v. Guffey, Mo., 409 S.W.2d 62, l.c. 70[5–7]; State ex rel., and to Use of Donelon v. Deuser, 345 Mo. 628, 134 S.W.2d 132, l.c. 136[7–9].

■ Defendants in their brief insist that the evidence failed to show any permanent injury to plaintiff's brain. They call special attention to the evidence of Doctor Leitch. However, Doctor Leitch gave plaintiff a very thorough examination but did not give him an electroencephalographic test. Such test at Mercy Hospital indicated brain damage. That evidence was not refuted. The evidence of plaintiff's parents that plaintiff was a changed person was not disputed. The jury was justified in finding that there was some brain damage. Defendants cited many cases where this court has ordered remittiturs. Cases with facts such as in the case before us are indeed few in number. We have concluded that the verdict of $22,000 for actual damages, while liberal, is not such as to justify us in saying that it is grossly excessive. Conlon v. Roeder, Mo., 418 S.W.2d 152, l.c. 159.

■ As to punitive damages of $20,000, we have come to a different conclusion. As may be noted in the test in 25 C.J.S. Damages § 123(4), pp. 1141, 1144, supra, in many jurisdictions punitive damages may not be awarded in cases of purely legal malice situations unless the evidence justifies the presence of actual malice or ill will. As noted supra, in Missouri malice may be inferred or implied if the act complained of was a violation of the law and without just cause or excuse. In the case before us, the evidence disclosed an entire absence of actual malice or ill will. In Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S.W.2d 687, l.c. 690[6, 7], an action for false arrest, a judgment for $12,000 punitive damages was reduced by remittitur to $2,000. In Beggs v. Universal C.I.T. Credit Corp., Mo., 409 S.W.2d 719, l.c. 724[8–13], an award of $14,000 was held excessive by $6,500. A lengthy discussion as to the amount of punitive damages to be assessed and the various elements to be considered may be found in 25 C.J.S. Damages § 126(1), pp. 1159–1168.

Taking into consideration the various facts and circumstances as revealed by the evidence, we deem the punitive damages of $20,000 to be excessive by $15,000. Each verdict as to punitive damages must be reduced by $7,500. If, therefore, within 15 days in this court, plaintiff will enter a remittitur of $15,000 from the amount of punitive damages, the judgment of the trial court will be affirmed in the sum of $22,000 actual damages against both defendants and $2,500 punitive damages against each defendant. Otherwise the judgment will be reversed and the cause remanded.

PER CURIAM:

The foregoing opinion by HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.